MAHONING COUNTY BAR ASSOCIATION *v.* PRITCHARD.

[Cite as *Mahoning Cty. Bar Assn. v. Pritchard,*

131 Ohio St.3d 97, 2012-Ohio-44.]

*Attorneys at law—Numerous violations of the Rules of Professional Conduct—*
*Indefinite license suspension.*

(No. 2011-0815—Submitted June 21, 2011—Decided January 11, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 10-025.

_____

**Per Curiam.**

{¶ 1} Respondent, Warren G. "Bo" Pritchard of Youngstown, Ohio, Attorney Registration No. 0008417, was admitted to the practice of law in Ohio in 1982. In November 2009, we suspended his license for his failure to register with the Office of Attorney Registration of the Supreme Court. *In re Attorney Registration Suspension of Pritchard,* 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256. Later that month, having been apprised of some of the misconduct described below, we imposed an interim remedial license suspension. *Mahoning Cty. Bar Assn. v. Pritchard*, 123 Ohio St.3d 1487, 2009-Ohio-5956, 916 N.E.2d 812.

{¶ 2} On June 15, 2010, relator, the Mahoning County Bar Association, filed an amended complaint with the Board of Commissioners on Grievances and Discipline alleging misconduct involving 20 client relationships, including numerous instances in which Pritchard accepted payment from clients, neglected their matters, failed to respond to their communications, and refused to refund their retainers.

**{¶ 3}** Relying on the parties' joint stipulation of facts and violations, the board made findings of fact and misconduct and recommended Pritchard's indefinite suspension from the practice of law and payment of restitution. With a few exceptions described below, we adopt the board's findings of facts and misconduct, order restitution, and indefinitely suspend Pritchard from the practice of law in Ohio.

## Misconduct

### Count A

**{¶ 4}** From May to July 2009, Pritchard accepted $1,350 from Margaret Bury to file a bankruptcy petition. Pritchard did not file the petition, respond to Bury's inquiries, or return her money. She ultimately retained a different attorney.

### Count B

**{¶ 5}** In April 2008, Pritchard accepted $1,200 to represent Gerald Cenneno in a breach-of-contract case. Pritchard prepared and filed a complaint. The defendant filed a counterclaim, which Pritchard discussed with Cenneno. From that point forward, however, Pritchard ceased returning Cenneno's calls and messages and took no further action in the case. Unbeknownst to Cenneno, the case proceeded and culminated in a default judgment against him, which he eventually learned about from opposing counsel. Cenneno spent weeks trying to reach Pritchard by telephone. He finally reached Pritchard, who stated that he would contact the court. Months passed, and despite many calls, Cenneno continued to have difficulty reaching Pritchard. Cenneno finally called the court himself and learned that no pleadings had been filed on his behalf. Further calls to Pritchard went unreturned. Cenneno finally retained another attorney, but he was unable to overturn the default judgment.

*Count C*

{¶ 6}  The probate court in Columbiana County appointed Pritchard to be commissioner of the estate of Steve Yancsurak.  During 2009, Pritchard failed to appear for several hearings.  After the last absence, the court—as it had warned it would do—found Pritchard in contempt and issued a warrant for his arrest.  The court referred the matter to disciplinary authorities but eventually recalled the warrant.

*Count D*

{¶ 7}  A client of Pritchard's, William DiRenzo, wished to purchase some real estate owned by Pritchard's mother.  In 2004, on his mother's behalf, Pritchard reached an agreement with DiRenzo and sold him the parcel.  In 2006, DiRenzo became interested in purchasing additional land from Pritchard, and he eventually contributed $29,500 to a partnership formed to that end.  The land had fallen into foreclosure, and despite DiRenzo's payment, after a series of agreements and payments involving multiple parties, the property ended up in the possession of a different buyer.  At the time of the stipulation, DiRenzo had not received back his expenditure of nearly $30,000 and did not own any of the land.

*Count E*

{¶ 8}  In September 2007, Amy and Joseph DiDomenico retained Pritchard to represent them in a dispute with a roofing contractor, eventually paying him fees totaling at least $1,700.  Pritchard took some initial steps to prosecute their complaint, but they soon began to have difficulty contacting him.  After Pritchard missed a status conference, in October 2006, the court dismissed the DiDomenicos' complaint.  For the next six months, the DiDomenicos continued to struggle to reach Pritchard.  In March 2009, Pritchard finally filed a motion to vacate the dismissal.  The court scheduled the motion for hearing, but despite a month's notice and reminders from the DiDomenicos, Pritchard failed to appear, telling the clients that the hearing was nonoral and that they need not

appear. The court nevertheless set the case for the trial. Two months after his interim suspension, Pritchard withdrew from the case, and the clients retained new counsel. The case remains pending.

*Count F*

{¶ 9} In April 2009, Evelyn Sue Lorent, a widow, paid Pritchard $1,300 to advise her regarding a probate matter and possible bankruptcy. Pritchard gave her a bankruptcy worksheet and developed a strategy for weighing the benefits of bankruptcy but then did no further work on her case. Unable to reach Pritchard in over five months despite numerous attempts, Lorent found another attorney. Pritchard did not return the $1,300.

*Count G*

{¶ 10} In August 2008, Carol Hovanes retained Pritchard to represent her in a foreclosure and possible bankruptcy, paying him $1,900 in legal and filing fees. Pritchard filed a motion for leave to move or plead on behalf of Hovanes. The motion, which was granted, proved to be the only filing Pritchard made in the case. Pritchard eventually stopped responding to Hovanes's calls and messages, and she hired a different attorney in January 2010. Pritchard has not returned to Hovanes any part of the fees that she had paid him.

*Count H*

{¶ 11} In August 2008, Duane and Tracie Corll paid Pritchard $1,300 to represent them in a bankruptcy proceeding. After completing some initial tasks, Pritchard became difficult to reach. Nevertheless, in May 2009 and at the Corlls' prodding, he filed the bankruptcy petition. The bankruptcy was eventually completed, subject to the filing of papers proving that the Corlls had attended posthearing counseling. After Pritchard failed to appear at a July 2009 hearing, the Corlls completed the counseling and paperwork but were unable to contact Pritchard to have it filed. The court notified the Corlls that filing the paperwork

now would require payment of the full filing fee again. When the paperwork was not filed, the court dismissed the case.

*Count I*

**{¶ 12}** In July 2009, Pritchard accepted $1,000 from Tina Marie Benson to file a bankruptcy petition, with a balance due of $350. Pritchard never filed the case, never returned Benson's calls and letters, and never met with Benson again. Months later, she hired a different attorney. Pritchard has not returned her fees.

*Count J*

**{¶ 13}** In October 2008, Richard Bodendorfer paid Pritchard $750 to form a limited-liability company. Two attempts at filing were rejected by the secretary of state, after which Pritchard asked Bodendorfer for an additional $250. Bodendorfer sent Pritchard a check, but Pritchard took no further action on his behalf. Pritchard has not refunded Bodendorfer's fee.

*Count K*

**{¶ 14}** In 2009, Darlene Burman retained Pritchard to assist in administering the estate of her deceased brother. He did not complete the estate's inventory, and without court authorization, he charged the estate $15,028 in fees and costs. The court did not sanction Pritchard, however, because he had almost completed the inventory, and the amount he charged was less than the court's compensation schedule would have called for. Burman retained new counsel, who completed the estate.

*Count L*

**{¶ 15}** Joyce Catterson retained Pritchard to represent her in a tort claim. The representation began no later than 1999 and lasted until 2007. The last action taken by respondent was an appeal from a magistrate's decision in June 2007, which was dismissed in July 2007 for lack of a final, appealable order. The lower court, however, has apparently taken no further action on the case, and the stipulated facts do not disclose any developments since then. Pritchard testified

that following the dismissal, he had informed Catterson's husband that "nothing is transpiring" and that he and they are "still waiting for the court to do something."

{¶ 16} Relator argued that Pritchard's conduct violated Prof.Cond.R. 1.4, which requires a lawyer to "keep the client reasonably informed about the status of the matter." The board, however, recommended dismissing this count in its entirety. It found that the record showed that nothing had happened in the case that needed reporting and that Pritchard had in fact informed Catterson's husband of the case's status.

{¶ 17} We agree with the board that these facts do not clearly and convincingly show that Pritchard violated Prof.Cond.R. 1.4. Accordingly, we dismiss this count.

*Count M*

{¶ 18} In 2006, Jennifer Coyier paid Pritchard $200 to handle an adoption, but he never filed the petition and did not return the money. Later, Coyier and her husband, Gordon, retained Pritchard to represent them in a breach-of-contract action. Pritchard filed a complaint in 2008 but performed no other work on the case; after he failed to appear at a pretrial conference, the court dismissed the case. Pritchard did not inform the Coyiers of the dismissal of the case, and they were later sued by the company that had financed the transaction related to the allegedly breached contract. The Coyiers eventually settled that claim for $1,200.

*Count N*

{¶ 19} In 2008, Emil Forska retained Pritchard in an effort to have his driver's license reinstated. Pritchard filed a complaint and attended a few hearings, but then neither worked on the case nor responded to his client's inquiries. The board states that the case was then dismissed, but the stipulated facts state that a filing fee was never paid and that the case "remains without a docket assignment."

*Count O*

{¶ 20} In June 2009, Betty Garback paid Pritchard $130 to transfer a property interest. Pritchard never performed the work, never responded to her communications, and never returned her money.

*Count P*

{¶ 21} Beginning in December 2008, Pritchard represented Saed Khatib in a property dispute. Despite accepting $300 from Khatib, Pritchard failed to appear for a hearing, failed to file necessary pleadings, failed to answer his client's communications, and failed to return Khatib's funds.

*Count Q*

{¶ 22} The parties stipulated to a dismissal of this count, and the board agreed that it had not been proven by clear and convincing evidence.

*Count R*

{¶ 23} In July 2009, Arthur Titus retained Pritchard to transfer to Titus the title to property that Titus had given to his late son. Pritchard accepted $450 from Titus but neither performed any work nor answered Titus's calls and letters. Nor did he return Titus's $450.

*Count S*

{¶ 24} In 2006, Clyde Weimer retained Pritchard to represent him in a complaint against two men and ultimately paid him $1,900. Well into the proceedings, in September 2009, the defendants filed a notice to take Weimer's deposition. Neither Pritchard nor Weimer appeared, and a few months later, Weimer retained new counsel.

{¶ 25} Regarding this count, the board found that Pritchard had violated Prof.Cond.R. 1.3, requiring "reasonable diligence and promptness in representing a client." While we accept the stipulated facts, we are not bound by the parties' stipulation to misconduct, see, e.g., *Trumbull Cty. Bar Assn. v. Donlin* (1996), 76 Ohio St.3d 152, 155, 666 N.E.2d 1137, and we do not agree that the stipulated

facts provide clear and convincing evidence of a lack of diligence. The only fact suggesting a lack of diligence was Pritchard's failure to attend a deposition. But it is not clear that Pritchard had notice of that deposition; in fact, the stipulation suggests that the notice of deposition was docketed in the wrong case. The stipulation also states that the court sent "a copy of a hearing notice * * * to all parties," but it does not explain whether this notice referred to the deposition. Even if it did, it was sent "by regular mail" on the day of the deposition, so it seems unlikely Pritchard could have received it in time. Nothing else in the stipulation addresses whether Pritchard had notice of the deposition.

{¶ 26} This assortment of facts affirmatively suggests that Pritchard did not receive notice of the proceeding that he missed. Thus, without more, his absence does not clearly and convincingly show a lack of diligence. Accordingly, we dismiss this charge.

*Count T*

{¶ 27} In 2009, Pritchard accepted $550 from John Zetts to seek a child-support reduction. Pritchard performed no work, did not respond to Zetts's calls, and did not refund the $550.

*Lack of Professional-Liability Insurance*

{¶ 28} The parties also stipulated that in each one of the representations listed above, Pritchard failed to advise his clients that he lacked professional-liability insurance.

**Conclusions of Law**

{¶ 29} The board concluded that the conduct described above resulted in violations of Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation), 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.4(a)(3) and (4) (requiring a lawyer to keep a client informed about the status of matters for which he or she was engaged and to comply as soon as practicable to reasonable requests for information), 1.4(c)

(requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance), 1.8 (prohibiting a lawyer from entering into a business transaction with a client unless certain conditions are met), 1.15(d) (requiring a lawyer promptly to deliver client funds and provide a full accounting of the funds), and 1.16(d) and (e) (requiring a lawyer to protect a client's interest upon termination of a representation and promptly to return unearned fees). Some of Pritchard's misconduct occurred while the Code of Professional Responsibility remained in effect; as to this conduct, the board found that Pritchard had violated DR 5-104(A) (prohibiting a lawyer from entering into a business transaction with a client if he and the client have different interests) and 6-101 (prohibiting a lawyer from neglecting an entrusted legal matter).

{¶ 30} Except as noted above, we adopt the board's conclusions.

### Sanction

{¶ 31} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties that the lawyer violated, the lawyer's mental state, and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 32} As to aggravating factors, the parties stipulated and the board found that Pritchard had acted with a dishonest or selfish motive, demonstrated a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process prior to the institution of formal proceedings, harmed vulnerable clients, and failed to make restitution. See BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), (h), and (i).

**{¶ 33}** As to mitigating factors, the parties stipulated and the board found that Pritchard lacked a prior disciplinary record, had fully and freely disclosed his misconduct, had been cooperative after the institution of formal proceedings, had presented evidence of good character and reputation, and had suffered and been treated for a mental disability that contributed to his misconduct. See BCGD Proc.Reg. 10(B)(2)(a), (d), (e), and (g)(i) through (iv). But although the board stated that Pritchard had no prior disciplinary record, that finding is erroneous. As stated earlier, he received an attorney-registration suspension in November 2009.

**{¶ 34}** Before the board, Pritchard argued for a two-year suspension with credit for time served under the remedial suspension, but the board disagreed and recommended that Pritchard be indefinitely suspended from the practice of law. The board recognized that much of Pritchard's misconduct occurred as he was struggling with major depression related to marital problems. And the board acknowledged that he had taken numerous steps to deal with these problems. But it found that negative factors outweighed the mitigating. Pritchard committed dozens of disciplinary violations that harmed approximately 20 clients, some irreversibly. Moreover, it found that Pritchard's "poor law office management" played a significant role in his misconduct, and his failure to establish a reliable system predated his marital problems. Some misconduct preceded his marital problems, including his failure to advise clients that he lacked malpractice insurance. And the board also found that Pritchard continued taking money from clients (without providing services) months into his personal crisis.

**{¶ 35}** The board recommended that Pritchard "be indefinitely suspended from the practice of law with no credit for time served and that he pay full restitution." Concerning restitution, the board was unable to "determine from the present record exactly how much" restitution Pritchard owes, and it suggested that relator make this determination. It also recommended that Pritchard provide

proof of continuing mental-health counseling, proof that he is fully competent to return to the practice of law, proof that he is in compliance with all Ohio Lawyers Assistance Program ("OLAP") requirements, and proof that he has attended a rigorous and comprehensive office-management course approved by relator. Further, the board recommends that we order him to comply with all applicable continuing-legal-education requirements, make restitution, pay the costs of the action, and commit no further misconduct. The board also recommends a two-year probationary period in the event of reinstatement, with several conditions.

{¶ 36} We adopt the board's recommended sanction, which is appropriate in this case. See, e.g., *Disciplinary Counsel v. Broschak*, 118 Ohio St.3d 236, 2008-Ohio-2224, 887 N.E.2d 1176, ¶ 50, 52 (imposing indefinite suspension when respondent neglected clients, failed to return unearned fees, caused his clients to forfeit legal rights, and did not adequately communicate with his clients); *Disciplinary Counsel v. Andrews*, 124 Ohio St.3d 523, 2010-Ohio-931, 924 N.E.2d 829, ¶ 18 (imposing indefinite suspension when respondent had no aggravating factors but committed multiple violations); see also, e.g., *Disciplinary Counsel v. Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, ¶ 25 (requiring payment of restitution as determined by relator). The record, the balance of aggravating and mitigating factors, and precedent all support the board's recommendation.

{¶ 37} Accordingly, Pritchard is indefinitely suspended from the practice of law in the state of Ohio. Prior to reinstatement, Pritchard must demonstrate that he has fulfilled the following conditions: (1) he must provide proof of continuing mental-health counseling and proof from a mental-health professional that he is fully competent to return to the practice of law; (2) he must comply with all requirements of his OLAP contract during the period of his suspension; (3) he must attend a rigorous and comprehensive course in law-office management approved by relator; (4) he must comply with any and all mandatory CLE

requirements; (5) he must make full restitution, as determined by relator, to Bury, Cenneno, the DiDomenicos, Lorent, Hovanes, the Corlls, Benson, Bodendorfer, Jennifer Coyier, Garback, Khatib, Titus, and Zetts for any unearned fees and unused cost advances, completion of which must be certified by relator; (6) he shall not commit any further misconduct during the period of suspension; and (7) upon reinstatement, he shall be subject to a two-year probationary period, during which he must (a) continue to abide by the foregoing requirements to the extent they are of a continuing nature, (b) be monitored by relator, and (c) permit relator to monitor his attorney trust account. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Ronald Slipski and David Comstock Jr., for relator.

_____