CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* PRYATEL.

[Cite as *Cleveland Metro. Bar Assn. v. Pryatel,* 135 Ohio St.3d 410,

2013-Ohio-1537.]

*Attorneys—Misconduct—Misuse of client funds—Knowingly making false*
*statement to tribunal—Charging excessive fee—Engaging in conduct*
*involving dishonesty or misrepresentation—Indefinite suspension with*
*reinstatement only upon specified conditions.*

(No. 2011-1727—Submitted January 9, 2013—Decided April 24, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 11-023.

_____

**Per Curiam**.

{¶ 1} Respondent, Mark Robert Pryatel of Euclid, Ohio, Attorney Registration No. 0019678, was admitted to the practice of law in Ohio in 1983. In February 2011, relator, the Cleveland Metropolitan Bar Association, filed a two-count complaint charging Pryatel with misuse of client funds and other professional misconduct involving two client matters. Pryatel did not file an answer—even though he had initially cooperated with relator's investigation and received notice of the complaint by certified mail. Relator moved for an entry of default, and the Board of Commissioners on Grievances and Discipline appointed a master commissioner, who found that Pryatel had committed most of the charged misconduct. The board adopted the master commissioner's findings of fact and misconduct and, as a sanction, recommended permanent disbarment.

{¶ 2} While the board's final report was pending before this court, Pryatel filed motions to remand for a hearing before the board and to supplement the record, arguing that previously undiagnosed psychological issues interfered

with his capacity to defend himself against the disciplinary charges. In January 2012, we remanded for a hearing, but we limited the board's review on remand to consideration of mitigation evidence and limited supplementation of the record accordingly. *Cleveland Metro. Bar Assn. v. Pryatel,* 131 Ohio St.3d 1404, 2012-Ohio-79, 959 N.E.2d 537. A three-member panel of the board thereafter conducted a hearing and, upon review of the new mitigation evidence, recommended reducing Pryatel's sanction to an indefinite suspension. The board agreed, and neither party has filed objections to the board's recommendation.

{¶ 3} We accept the board's recommendation and indefinitely suspend Pryatel from the practice of law in Ohio.

**Misconduct**

**1. Count One—The Troyan Matter**

{¶ 4} Based on the sworn affidavit of grievant Richard J. Troyan, Pryatel's precomplaint deposition testimony, and other evidence, the board found that Troyan retained Pryatel to represent him in several criminal matters, including a motion for judicial release. Troyan informed Pryatel that he was permanently disabled and unable to secure employment upon his release from prison. Nevertheless, Pryatel wrote in the motion for judicial release that "Defendant Troyan has arranged for employment upon his release." Pryatel later described this language as "boilerplate" and predicted that it would make Troyan "look better to the judge." But Troyan claimed that Pryatel misrepresented his ability and intent to secure employment upon his release from prison. Even after ascribing "some tenuousness to the credibility of Troyan, an apparent career criminal," the board found, and we agree, that Pryatel had violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal).

{¶ 5} In addition, while in prison, Troyan received a $50,000 settlement check from the Ohio Bureau of Workers' Compensation. Pryatel deposited the

check into his personal bank account, rather than a client trust account. Over the course of his representation of Troyan, Pryatel deducted over $29,000 in legal fees from the settlement proceeds, including $7,000 for responding to 70 letters from Troyan while he was in prison. And at the time of the default proceedings below, Pryatel had not returned the remainder of the settlement proceeds to Troyan, despite his repeated requests for the money.

**{¶ 6}** Based on these findings, we agree with the board that in addition to his violation of Prof.Cond.R. 3.3(a)(1), as noted above, Pryatel violated Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

### 2. Count Two—The Martich Matter

**{¶ 7}** Based on the sworn affidavit of grievant Luis A. Martich and other evidence, the board found that Martich retained Pryatel to seal his criminal records. Martich's father paid Pryatel $2,025 to settle an outstanding restitution order, satisfy court costs, and cover Pryatel's legal fees. Pryatel, however, never filed the motion to seal Martich's records, nor did he settle the restitution order or pay the court costs. Pryatel also failed to respond to Martich's repeated attempts to contact him, and at the time of the default proceeding below, he had not returned the money to Martich's father. As a result of Pryatel's neglect, Martich also claimed that he lost his eligibility to seal his records.

**{¶ 8}** The board found, and we agree, that Pryatel's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about

the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.15(c), and 8.4(c). We also agree with the board's recommendation to dismiss the remaining charge under Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) relating to Martich's allegation that Pryatel's neglect resulted in the permanent loss of his eligibility to seal his records. Whether Martich lost eligibility to seal his records is a legal determination, and therefore the allegation in Martich's affidavit alone is insufficient to warrant a finding that Pryatel's conduct violated this rule. Accordingly, we dismiss this charge.

### Sanction

{¶ 9} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties violated, the actual injury caused, the existence of any aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B), and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16; *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. We have already identified Pryatel's ethical breaches to his clients and the legal profession. The board determined that four of the nine aggravating factors weighed in favor of a more severe sanction, including committing multiple offenses, failing to make restitution, refusing to acknowledge the wrongful nature of his conduct, and failing to cooperate in the disciplinary process. *See* BCGD Proc.Reg. 10(B)(1)(d), (e), (g), and (i). Initially, the board found only one mitigating factor in Pryatel's favor—the absence of a disciplinary record—and recommended that we permanently disbar him.

{¶ 10} However, on remand, the board determined that Pryatel demonstrated the existence of several mitigating factors that, along with our relevant case law, justify a reduction in the original recommended sanction to an

indefinite suspension. For the reasons explained below, we agree with the board's recommendation.

## 1. Pryatel's Mitigation Evidence

{¶ 11} On remand, Pryatel argued that all eight of the mitigating factors listed in BCGD Proc.Reg. 10(B)(2) weighed in his favor. Specifically, to demonstrate an absence of a dishonest or selfish motive, he submitted voluminous records from the Troyan matter—including copies of 141 letters between him and Troyan—to justify the legal fees that he charged for the 23-month representation. Pryatel also called Martich's father as a witness, and he testified that Pryatel was never dishonest or selfish with him. To demonstrate that he had attempted to rectify the consequences of his misconduct, Pryatel proved that he had refunded $20,000 to Troyan between June 2010 and April 2012 and that he had repaid the full $2,025 to Martich's father in September 2011.

{¶ 12} Pryatel further testified that he had cooperated with relator's investigation by timely responding to relator's initial inquiries, meeting with relator's investigator on three occasions, sitting for two days of depositions, and providing all the documents requested by relator relating to those depositions. Pryatel blamed his subsequent failure to answer relator's complaint and participate in the disciplinary proceedings on his previously undiagnosed generalized anxiety disorder and major depressive disorder, from which he was suffering in January 2011 when he received relator's notice of intent to file the complaint. The psychiatrist who diagnosed Pryatel with these disorders also testified that the prolonged illness and death, in 2011, of Pryatel's mother—for whom Pryatel was the primary caregiver—contributed to his depression. The psychiatrist further concluded that Pryatel's depressive disorder was in remission and that Pryatel is capable of returning to the ethical and competent practice of law as long as he receives treatment for the disorders, including establishing a relationship with a treating psychiatrist. In addition, in December 2011, Pryatel

entered into a three-year contract with the Ohio Lawyers Assistance Program ("OLAP"), which requires him to, among other things, attend group therapy, seek individual counseling, and make contact with OLAP three times a week.

{¶ 13} As to Pryatel's character and reputation, three judges of the Cuyahoga County Court of Common Pleas submitted letters praising Pryatel as professional, competent, and reputable. Judge Ronald Suster stated that Pryatel is respected for "filling a critical need in our criminal justice system by frequently representing poor defendants facing the possibility of significant prison terms." Similarly, three criminal-defense lawyers testified as to Pryatel's lengthy career, honesty, good character, and professional reputation in the criminal-defense field.

{¶ 14} Finally, Pryatel informed the hearing panel that in April 2012, he pled guilty to a first-degree misdemeanor for aggravated theft relating to the Troyan matter, and in May 2012, he was sentenced to jail for six months, all suspended, and ordered to serve one year of probation, perform 100 hours of pro bono work for Cleveland Legal Aid, and pay a fine of $1,000.

### 2. The Board's Treatment of the Mitigation Evidence

{¶ 15} The board found, and we agree, that Pryatel demonstrated the existence of only four of the eight mitigating factors listed in BCGD Proc.Reg. 10(B)(2)—specifically, an absence of a disciplinary record, good professional character and reputation, imposition of other penalties and sanctions, and other interim rehabilitation, such as the OLAP contract. BCGD Proc.Reg. 10(B)(2)(a), (e), (f), and (h).

{¶ 16} Despite the testimony from Martich's father, Pryatel did not establish an absence of a dishonest or selfish motive under BCGD Proc.Reg. 10(B)(2)(b)—mostly because he pled guilty to theft. Similarly, we cannot conclude that Pryatel made a "timely good faith effort" toward restitution under BCGD Proc.Reg. 10(B)(2)(c), when he waited four years to repay Martich's father and did not complete restitution to Troyan until well after the disciplinary

complaint was filed. We likewise cannot find that Pryatel exhibited a "cooperative attitude" toward the disciplinary process when it resulted in a default proceeding against Pryatel.

{¶ 17} Finally, Pryatel's recent mental-disorder diagnoses do not qualify as a mitigating factor. While the psychiatrist who diagnosed Pryatel concluded that his mental disorders contributed to his failure to cooperate in the disciplinary proceedings, the doctor did not conclude that the disorders contributed to the professional misconduct charged in this case, as required by BCGD Proc.Reg. 10(B)(2)(g)(ii). Further, as the board determined, BCGD Proc.Reg. 10(B)(2)(g)(iv) requires a prognosis that the lawyer will be able to return to the competent, ethical, and professional practice of law under "specified conditions." The psychiatrist here testified that the specific conditions under which Pryatel could return to the competent, ethical, and professional practice of law would need to be determined by a psychiatrist with whom Pryatel had established a relationship. But at the time of the remand hearing, Pryatel admitted that he had not yet established a relationship with a treating psychiatrist.

### 3. Applicable Precedent

{¶ 18} We have previously recognized that permanent disbarment is the appropriate sanction for cases involving the misappropriation of client funds. *See, e.g., Trumbull Cty. Bar Assn. v. Kafantaris*, 121 Ohio St.3d 387, 2009-Ohio-1389, 904 N.E.2d 875, ¶ 14 ("misappropriation of client funds carried a 'presumptive sanction of disbarment' "), quoting *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 15. However, we have also previously imposed indefinite suspensions in misappropriation cases, based in part on the existence of mitigating factors. *Disciplinary Counsel v. Bandman*, 125 Ohio St.3d 503, 2010-Ohio-2115, 929 N.E.2d 442 (indefinite suspension for an attorney who misappropriated client trust funds when mitigating factors included lack of prior disciplinary record, cooperation with the investigation, significant

remorse, and payment of restitution); *Akron Bar Assn. v. Dietz*, 108 Ohio St.3d 343, 2006-Ohio-1067, 843 N.E.2d 786 (indefinite suspension for an attorney who misappropriated client funds when mitigating factors included payment of restitution, waiver of earned fees, lack of prior discipline during career of more than 20 years, and good character).

{¶ 19} In addition, as the board noted in its report, we have imposed indefinite suspensions on attorneys for misconduct that was substantially more egregious than Pryatel's. *See, e.g.*, *Mahoning Cty. Bar Assn. v. Pritchard*, 131 Ohio St.3d 97, 2012-Ohio-44, 961 N.E.2d 165 (indefinite suspension for misconduct involving 20 clients, including numerous instances of accepting fees for work not performed, neglecting clients' legal matters, failing to respond to client inquiries, and refusing to refund unearned retainers). And we have also imposed indefinite suspensions on attorneys who suffered from mental illness or substance abuse but who failed to present sufficient evidence to establish that their condition qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv). *Columbus Bar Assn. v. Van Sickle*, 128 Ohio St.3d 376, 2011-Ohio-774, 944 N.E.2d 677, ¶ 14, and cases cited therein. "This sanction serves to protect the public while leaving open the possibility that with proper rehabilitation, the sanctioned attorney might one day be able to resume the competent, ethical, and professional practice of law." *Id.*

## Conclusion

{¶ 20} Having reviewed the record, and the aggravating and mitigating factors, and having considered the sanctions previously imposed for comparable conduct, we agree with the board that the appropriate sanction is an indefinite suspension. Pryatel's serious misconduct is tempered by the mitigating factors cited in the board's report. Accordingly, Mark Robert Pryatel is hereby indefinitely suspended from the practice of law in the state of Ohio. Any future reinstatement is conditioned on the submission of proof that Pryatel has complied

with the terms of his OLAP contract, has obtained treatment from a psychiatrist for his mental disorders, has fulfilled all follow-up care and reporting requirements imposed by OLAP and his treating psychiatrist, and has paid the costs of this proceeding. Upon petitioning for reinstatement, Pryatel shall also be required to submit a statement from a qualified mental-health professional demonstrating that he is capable of returning to the competent, ethical, and professional practice of law. Costs are taxed to Pryatel.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Ian N. Friedman and Ronald Frey, for relator.

Richard C. Alkire and Dean Nieding, for respondent.

_____