**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Cincinnati Bar Assn. v. Hoskins,* **Slip Opinion No. 2016-Ohio-4576.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-4576

CINCINNATI BAR ASSOCIATION *v.* HOSKINS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati Bar Assn. v. Hoskins,* Slip Opinion No. 2016-Ohio-4576.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to keep clients reasonably informed about status of a matter—Indefinite suspension.*

(No. 2015-1003—Submitted December 1, 2015—Decided June 28, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-014.

_____

**Per Curiam.**

{¶ 1} Respondent, Robert Hansford Hoskins of Cincinnati, Ohio, Attorney Registration No. 0068550, was admitted to the practice of law in Ohio in 1997. In a six-count complaint, relator, Cincinnati Bar Association, charged Hoskins with multiple violations of the Rules of Professional Conduct for misconduct including

neglecting client matters, failing to reasonably communicate with clients, failing to provide competent representation to a bankruptcy client, engaging in dishonest conduct, improperly paying referral fees to a nonlawyer, and failing to update his attorney registration to reflect that he no longer practiced with a firm.

{¶ 2} During the pendency of this disciplinary action, the Supreme Court of Kentucky suspended Hoskins from the practice of law in Kentucky for 60 days. *Kentucky Bar Assn. v. Hoskins*, 454 S.W.3d 289 (Ky.2015). We imposed reciprocal discipline on April 23, 2015, suspending Hoskins from the practice of law in Ohio for 60 days, and we conditioned his reinstatement on several factors, including his reinstatement to the practice of law in Kentucky. *Disciplinary Counsel v. Hoskins*, 142 Ohio St.3d 1244, 2015-Ohio-1532, 30 N.E.3d 964. That suspension remains in effect.

{¶ 3} The parties submitted stipulations of fact and exhibits, and a panel of the Board of Commissioners on Grievances and Discipline, now the Board of Professional Conduct, *see* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII, conducted a two-day hearing in July 2014.

{¶ 4} In October 2014, a panel of the board found that there was probable cause for the filing of a second complaint in the case. That complaint alleged that Hoskins neglected another client matter, failed to reasonably communicate with the client, knowingly made false statements of material fact in connection with his disciplinary matter, and knowingly failed to respond to relator's demands for information.

{¶ 5} After an additional day of hearing in February 2015, the panel issued a report finding that Hoskins had engaged in most, but not all, of the charged misconduct and recommending that he be indefinitely suspended from the practice of law. The board adopted the panel's report and recommendation. Hoskins objects to the board's report—challenging some of the board's findings of fact and

misconduct while admitting others—and argues that his conduct warrants a fully stayed 12-month suspension.

{¶ 6} Having thoroughly reviewed the board's report, the record in this case, our precedents, and the arguments of the parties, we overrule Hoskins's objections, adopt the board's findings of fact and misconduct, and indefinitely suspend Hoskins from the practice of law in Ohio.

## Misconduct

### Count One: The Kraus Bankruptcy

{¶ 7} The board found that Hoskins commenced Chapter 11 and Chapter 13 bankruptcy proceedings on behalf of his client, Jason Kraus, but that the bankruptcy court had found that both filings contained multiple deficiencies. The Chapter 11 petition was stricken by the court after it discovered that Kraus had failed to attend a required credit-counseling session in compliance with a federal statute mandating attendance within 180 days before filing the bankruptcy petition.

{¶ 8} Hoskins later filed a Chapter 13 petition on Kraus's behalf, but the bankruptcy court dismissed that case based on his failure to correct multiple deficiencies in the petition and Kraus's failure to make payments required under the bankruptcy plan. Although Hoskins moved to reopen the proceeding, he later moved the court to withdraw that motion without the client's knowledge or consent.

{¶ 9} The court ordered Hoskins to appear and show cause why he should not be found in contempt of court for his failure to attend a hearing with Kraus after the same hearing had been continued a week before due, to Hoskins's failure to appear. He failed to appear or otherwise respond to the court's order and was consequently ordered to pay a $500 sanction on or before June 1, 2013. At the time of his July 2014 disciplinary hearing, the sanction remained outstanding. While Hoskins testified that he intended to pay the sanction, he did not do so until February 2015—one year and eight months after payment was due.

**{¶ 10}** The board found that Hoskins violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client) by filing deficient bankruptcy petitions on Kraus's behalf and that by failing to obtain Kraus's consent before moving to withdraw the motion to reopen the Chapter 13 bankruptcy proceeding, he violated Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required) and 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter). The board also found that Hoskins violated Prof.Cond.R. 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation) by failing to adequately advise Kraus about certain bankruptcy requirements, including the necessities of completing credit counseling before initiating a bankruptcy proceeding and of complying with the jurisdictional debt limits of a Chapter 13 bankruptcy.

**{¶ 11}** The board recommends that we dismiss alleged violations of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) based on the insufficiency of the evidence.

**{¶ 12}** In his objections, Hoskins admits that given his inexperience, it was imprudent for him to file a Chapter 11 petition on Kraus's behalf and that he erred in allowing a "frantic client" who was desperately trying to avoid the foreclosure of several properties to convince him to file a Chapter 13 petition without confirming that the client's debts fell within the jurisdictional limits of such a proceeding. But he objects to the board's finding that he violated Prof.Cond.R. 1.4(a), arguing that he reasonably believed that his client had consented to withdraw

his motion to reopen the fatally flawed Chapter 13 case. The evidence belies that claim.

{¶ 13} Kraus made it clear from the beginning of the representation that his objective in filing for bankruptcy was to avoid the foreclosure of his properties. His statements to the bankruptcy court when Hoskins failed to appear at the hearing on the motion to reopen the Chapter 13 proceeding and his testimony at the panel hearing make it clear that he had no knowledge of Hoskins's attempt to withdraw that motion. Indeed, when Hoskins failed to appear at the bankruptcy hearing, Kraus submitted handwritten objections to the motion to withdraw, explaining that if the case were not reopened and an immediate stay not put in place, several of his properties would be sold at a sheriff's sale within 24 hours. Based on Kraus's handwritten objections, the court vacated the dismissal entry and reopened the bankruptcy case. Thus, there is ample evidence to support the board's finding that Hoskins violated Prof.Cond.R. 1.4(a)(1) and (3) by failing to keep Kraus informed about the status of his legal matter and failing to obtain Kraus's informed consent regarding the outcome of his motion to reopen the Chapter 13 proceeding.

{¶ 14} Having reviewed the record, we conclude that the board's remaining findings of misconduct with respect to this count are supported by clear and convincing evidence. We therefore overrule Hoskins's objections and find that his conduct in this matter violated Prof.Cond.R. 1.1, 1.4(a)(1), 1.4(a)(3), and 1.4(b). Consistent with the board's recommendation, we also dismiss alleged violations of Prof.Cond.R. 1.3, 1.4(a)(2), and 8.4(d) with respect to this count.

*Count Two: The Amer Dissolution*

{¶ 15} Hoskins agreed to represent Gretchen Puff Amer in the dissolution of her marriage in 2010. During the representation, he drafted a separation agreement providing that "legal counsel for the Wife should draft the QDRO's [Qualified Domestic Relations Orders] necessary to divide the marital retirement

assets." (Brackets sic.) Hoskins failed to prepare a QDRO and failed to respond to Amer's numerous requests that he do so.

{¶ 16} On these facts, the board found that Hoskins neglected Amer's legal matter in violation of Prof.Cond.R. 1.3, failed to reasonably communicate with her in violation of Prof.Cond.R. 1.4(a)(2), 1.4(a)(3), and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), and failed to explain the matter to the extent necessary to permit Amer to make informed decisions regarding the representation in violation of Prof.Cond.R. 1.4(b). The board also recommended that we dismiss an alleged violation of Prof.Cond.R. 8.4(d) based on the insufficiency of the evidence.

{¶ 17} In his objections, Hoskins admits that he should have clearly communicated his intention for Amer to have the QDRO prepared by a more experienced firm in a more timely and less costly manner. He admits that he violated Prof.Cond.R. 1.3 by failing to formally withdrawal from the representation after the dissolution was granted. But he does not object to the board's findings that his conduct violated Prof.Cond.R. 1.4(a)(2) through (4) and 1.4(b).

{¶ 18} Having determined that the board's findings are supported by clear and convincing evidence, we agree that Hoskins's conduct in this matter violated Prof.Cond.R. 1.3, 1.4(a)(2) through (4), and 1.4(b), and we dismiss the alleged violation of Prof.Cond.R. 8.4(d).

*Count Three: The Loury Collection Matter*

{¶ 19} Hoskins represented Paul Loury in a garnishment proceeding. He failed to attend a hearing before Judge Brett Spencer in the Adams County Court of Common Pleas due to an alleged scheduling conflict involving a hearing in Indiana. Hoskins's office staff arranged for another attorney who was not familiar with the case or the client to attend the Adams County hearing. The judge continued the hearing but requested documentation of Hoskins's scheduling conflict. Although Hoskins had received, but not read, an e-mail notifying him that the

Indiana hearing had been postponed and actually learned of the postponement the morning of the hearing, he did not inform Judge Spencer of these facts when he provided the requested documentation.

{¶ 20} In a letter to relator, Hoskins implied that the attorney who had attended the hearing on his behalf had met with Loury before appearing at the hearing. But the board determined that that implication was in direct conflict with the testimony of Judge Spencer and the statements made by the other attorney on the record at the garnishment hearing. The board therefore concluded that Hoskins had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Prof.Cond.R. 8.4(c) but recommended that we dismiss alleged violations of Prof.Cond.R. 3.3(a) (prohibiting a lawyer from knowingly offering evidence that the lawyer knows to be false) and 8.4(d). Hoskins does not object to the board's findings with respect to this count. We find that his conduct in this matter violated Prof.Cond.R. 8.4(c), and we dismiss the alleged violations of Prof.Cond.R. 3.3(a) and 8.4(d).

*Count Four: Fee Sharing and Referral Fees*

{¶ 21} Hoskins contracted to accept the referral of Social Security disability cases from Citizens Disability, L.L.C., a Massachusetts limited-liability company that describes itself as a national disability advocacy group. He stipulated that he pays the organization half of the 25 percent contingency fee he receives in the cases it refers to him. Their written agreement also described a fee for advertising, screening, and other case assistance not to exceed $3,000 per case.

{¶ 22} Prof.Cond.R. 5.4(a) permits a lawyer or law firm to share legal fees with a nonlawyer only in limited circumstances—the most relevant here being that a lawyer may share legal fees with a nonprofit organization that recommended employment of the lawyer in the matter if the nonprofit organization complies with Gov.Bar R. XVI. *See* Prof.Cond.R. 5.4(a)(4) and (5).

{¶ 23} Gov.Bar R. XVI regulates Ohio-lawyer-referral-and-information services and requires them to operate in the public interest, to identify themselves as a lawyer-referral service or a lawyer-referral-and-information service, and to register with the Supreme Court Office of Attorney Services. *See* Gov.Bar R. XVI(1)(A)(1) and (2) and (B). At his July 2014 disciplinary hearing, Hoskins did not dispute that Citizens Disability is not a lawyer-referral service or that the organization had not complied with the regulations imposed on lawyer-referral services, and he admitted that he paid a portion of his contingency fee to the organization. Therefore, the board found that his conduct violated Prof.Cond.R. 5.4(a) and 7.2(b)(3) (providing that a lawyer shall not give anything of value to a person for recommending the lawyer's services except in certain enumerated circumstances, including the payment of a referral fee to a qualifying nonprofit lawyer-referral service).

{¶ 24} The board also suggested that Hoskins's contract with Citizens Disability violated Prof.Cond.R. 5.4(c) (prohibiting a lawyer from permitting a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services), but Hoskins was not charged with a violation of that rule.

{¶ 25} Hoskins objects to the board's findings and argues that his arrangement with Citizens Disability is permissible because the organization is run by an attorney and his actions were not directed by nonattorneys. He also suggests that the fees he pays are not improper referral fees because the Social Security Administration permits nonattorneys to represent disability claimants and because Citizens Disability *may* have assisted him in obtaining voluminous medical records in referred cases. But the evidence clearly and convincingly establishes that Citizens Disability is not a lawyer-referral service as defined in Gov.Bar R. XVI and that Hoskins's payments to Citizens Disability do not otherwise fall within an exception to Prof.Cond.R. 5.4(a) or 7.2(b)(3). Therefore, we overrule Hoskins's

objections and adopt the board's findings that his relationship with Citizens Disability violated Prof.Cond.R. 5.4(a) and 7.2(b)(3).

*Count Five: The Games Dissolution*

**{¶ 26}** Scott Games retained Hoskins to dissolve his marriage in June 2013 and paid a $1,000 retainer plus $275 for court costs. Before Hoskins completed the necessary documents, Games discharged him and requested a billing statement and refund of any unearned fees. Hoskins did not provide the requested accounting or refund. Nor did he respond to a later request for a full refund. At his July 2014 disciplinary hearing, Hoskins delivered a $1,500 refund check to Games. Because the check was not drawn on a client trust account, the board concluded that Hoskins had never deposited Games's fees into a client trust account.

**{¶ 27}** Therefore, the board found that Hoskins violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), and 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive).

**{¶ 28}** Hoskins challenges the sufficiency of the board's findings with regard to the trust-account violations. He contends that the mere fact that he issued a refund to Games from a different bank account does not prove that he failed to deposit the client's retainer into a client trust account. But Hoskins stipulated that he did not deposit Games's retainer into a client trust account. He also admitted that he deposited the money into his business account and testified that he did not have a client trust account when he received the retainer. We therefore overrule Hoskins' objection, and we adopt the board's findings that he violated Prof.Cond.R. 1.15(a), (c), and (d) in the Games matter.

*Count Six: False Attorney Registration*

{¶ 29} Hoskins practiced law as a partner in the firm of Hoskins & Muzzo, L.L.P., for a time. But that firm dissolved and its registration with the Ohio secretary of state was cancelled in 2011. Hoskins failed to update his attorney registration to reflect the change in his employment and admitted, and the board found, that his conduct violated Prof.Cond.R. 7.1 (prohibiting a lawyer from making or using false, misleading, or nonverifiable communication about the lawyer or the lawyer's services) and 7.5(d) (permitting lawyers to state or imply that they practice in a partnership or other organization only when that is factually true). We adopt the board's findings in this regard and find that Hoskins's conduct violated Prof.Cond.R. 7.1 and 7.5(d).

*Count Seven: The Long Personal-Injury Matter*

{¶ 30} Angela Long retained Hoskins in August 2013 to represent her in a personal-injury matter arising from an automobile accident. At their first and only meeting, Long provided him with photographs showing the damage to her car and correspondence that she had received from the other driver's insurance company. Shortly thereafter, Hoskins e-mailed her a contingency-fee agreement that she promptly signed and returned, but he never provided her with a fully executed copy of that agreement.

{¶ 31} On August 30, 2013, the other driver's insurance company sent Long a letter stating that it expected to resolve her property-damage claim within 45 days, but Hoskins waited until October 9 to inform the insurance company that he represented her. In early November, Long advised Hoskins that she was willing to accept $1,500 but that she wanted to keep her car. After about a month, she e-mailed him to ask whether the insurance company had responded to her settlement demand; she also left him multiple telephone messages but received no response. On December 18, 2013, Long sent Hoskins a text message reminding him that she had been trying to reach him; she also requested that he return the photographs of

her car. In late January 2014, Hoskins e-mailed Long to advise her that the insurance company would not pay more than $1,150 for her car.

{¶ 32} Frustrated by Hoskins's failure to communicate, Long terminated his representation on February 27, 2014, and requested her file. Hoskins responded the same day, stating that he would send the materials to her within a week. Between March 27 and May 15, 2014, Long's new attorney twice wrote to Hoskins to request her file and followed up with a phone call, but he did not receive the file.

{¶ 33} The board found that Hoskins neglected Long's legal matter, failed to keep her reasonably informed about the status of her matter, and failed to promptly deliver property that she was entitled to receive in violation of Prof. Cond. R. 1.3, 1.4(a)(3), and 1.15(d). The board also found that his contingent-fee agreement did not satisfy the requirements of Prof.Cond.R. 1.5(c)(1) (requiring an attorney to set forth a contingent-fee agreement in a writing signed by the client and the attorney), because he did not sign it and return a copy to Long.

{¶ 34} Relator forwarded Long's grievance to Hoskins on June 27, 2014, and requested a response by July 14, 2014. Having received no response, relator sent a second letter of inquiry on August 1, 2014, and reminded Hoskins of his obligation to cooperate with the investigation. In an August 13 e-mail, Hoskins informed relator that although he was initially unable to locate Long's photographs, he later found them and forwarded them to her new attorney. But Long's new attorney testified that he did not receive the file until relator forwarded it to him. The board found that Hoskins had falsely claimed to have forwarded Long's file to her new counsel and thereby violated Prof.Cond.R. 8.1(a) (prohibiting an attorney from knowingly making a false statement of material fact in connection with a disciplinary matter).

{¶ 35} Hoskins did not provide relator a copy of Long's file and the photographs of her car until December 11, 2014, and did so only in response to a notice of deposition duces tecum. Although relator had requested (and Hoskins had

agreed to provide) a number of other documents—including a copy of his telephone records from August 31, 2013, through June 1, 2014, proof of malpractice insurance, and copies of the bank statements for his client trust account—Hoskins did not provide them. After the panel chair ordered him to produce the documents by a date certain, he belatedly produced proof that he had carried malpractice insurance in 2013, some of the requested telephone records, and a copy of a subpoena issued to the Law Offices of Danny R. Bubp seeking production of client-trust-account records.[1] The board found that this conduct violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation).

{¶ 36} Hoskins does not dispute the board's findings that he violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.5(c)(1), 1.15(d), 8.1(a), and 8.1(b) with respect to the Long matter, and we adopt the board's findings in this regard.

## Sanction

{¶ 37} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties the lawyer violated, relevant aggravating and mitigating factors, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

{¶ 38} The board did not find that any mitigating factors are present. As aggravating factors, it found that Hoskins has a prior disciplinary record, engaged in multiple counts of misconduct, refused to acknowledge the wrongful nature of his conduct, and failed to make timely restitution to Games. *See* Gov.Bar R. V(13)(B)(1), (4), (7), and (9). In addition, the board found that Hoskins submitted

---

[1] Hoskins testified that beginning in 2011, he was affiliated with the Bubp firm as a contract employee but that the affiliation terminated on December 1, 2014, following Bubp's election as the Brown County Juvenile and Probate Court Judge. He stated that during this affiliation, he did not maintain his own client trust account but that he used the account maintained by the Bubp firm and that he was unable to access bank records for transactions involving the account. But that testimony contradicts his deposition testimony that he maintained a separate client trust account during that time.

false statements or engaged in other deceptive practices during the disciplinary proceeding and failed to cooperate in the disciplinary process. *See* Gov.Bar R. V(13)(B)(5) and (6). These factors were evident in his deceptive conduct in the Long matter, his false testimony regarding his client trust account, and his failure to produce requested documents—even when ordered to do so. And although he ultimately produced some of the requested documents, the board found that they had been in his possession and control all along.

{¶ 39} The board considered a number of cases in which we imposed disciplinary sanctions on attorneys who had engaged in various acts of misconduct comparable to discrete aspects of Hoskins's misconduct. But in light of the multiple counts of misconduct in this case, the board recommended that we indefinitely suspend Hoskins from the practice of law and that his reinstatement be conditioned on his (1) completion of a continuing-legal-education ("CLE") course focused on law-office management, (2) obtaining a passing score on the Multistate Professional Responsibility Examination, and (3) payment of the costs of this proceeding. In support of that sanction, the board cited *Cleveland Metro. Bar Assn. v. Pryatel*, 135 Ohio St.3d 410, 2013-Ohio-1537, 988 N.E.2d 541, and *Disciplinary Counsel v. Lord*, 111 Ohio St.3d 131, 2006-Ohio-5341, 855 N.E.2d 457.

{¶ 40} In *Pryatel*, we indefinitely suspended an attorney for misconduct that included providing incompetent representation to a client, neglecting a client's legal matter, failing to reasonably communicate with a client, knowingly making a false statement of fact or law to a tribunal, failing to deposit client funds into a client trust account, failing to forward settlement proceeds to a client, and charging a clearly excessive or illegal fee. Mitigating factors in *Pryatel* included the absence of a prior disciplinary record, evidence of Pryatel's good character and reputation apart from the charged misconduct, the imposition of criminal sanctions for his theft, and evidence of other interim rehabilitation. *Id.* at ¶ 13-15.

**{¶ 41}** The attorney in *Lord* neglected a client's bankruptcy matter by failing to file necessary documents, failing to respond to the trustee's motion to dismiss the case, and failing to appear at a scheduled creditors' meeting. He also intentionally failed to carry out two contracts of professional employment by voluntarily dismissing one case without the client's consent or approval and failing to attend a pretrial hearing in another case, resulting in the dismissal of the client's case with prejudice. And when his inaction resulted in a court dismissing another case, he led the client to believe that he had intentionally dismissed it. Based on this misconduct and Lord's failure to cooperate in the resulting disciplinary investigation, we indefinitely suspended him from the practice of law. *Id.* at ¶ 22-23, 30.

**{¶ 42}** Hoskins objects to the board's recommendation that he be indefinitely suspended from the practice of law. While acknowledging that he has made some mistakes, he contends that his conduct in the charged matters is not indicative of his usual practice. Citing several cases that involved misconduct comparable to certain acts of his own misconduct, Hoskins suggests that a fully stayed 12-month suspension, or alternatively a period of monitored probation, would be an appropriate sanction in this case.

**{¶ 43}** Hoskins does not appreciate the magnitude of his own misconduct— even though it touches virtually every aspect of his practice, including how he attracts clients, his fee agreements with those clients, where he deposits the money he receives from his clients, how he communicates (or fails to communicate) with them, whether he returns their files or the unearned portion of their fees upon the termination of his representation, how he interacts with the courts in handling their legal matters, and how he conducts himself in his own dealings with the court. His misconduct demonstrates a disturbing pattern of neglect and an ongoing failure to comply with established rules and procedures—not to mention a flagrant disobedience of court orders and a troubling propensity to engage in dishonesty

when his actions are questioned.[2]  Given the nature and breadth of this misconduct, we agree that an indefinite suspension, rather than the stayed term suspension or period of monitored probation proposed by Hoskins, is necessary to protect the public from further harm.  We therefore overrule Hoskins's objection to the sanction recommended by the board.

{¶ 44} Accordingly, we indefinitely suspend Robert Hansford Hoskins from the practice of law in Ohio.  In the event that he petitions this court for reinstatement to the practice of law, in addition to the requirements set forth in Gov.Bar R. V(25), his reinstatement shall be conditioned on his completion of a CLE course focused on law-office management, obtaining a passing score on the Multistate Professional Responsibility Examination, and payment of the costs of this proceeding.

{¶ 45} Judgment accordingly.

PFEIFER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and O'DONNELL and LANZINGER, JJ., dissent and would disbar respondent.

_____

[2] We note that Hoskins has continued to engage in grave misconduct even while this disciplinary action has been pending.  On November 5, 2015, we found Hoskins in contempt for failing to obey our April 23, 2015 order that suspended him from the practice of law in Ohio for 60 days.  *Disciplinary Counsel v. Hoskins*, 143 Ohio St.3d 1508, 2015-Ohio-4577, 39 N.E.3d 1276.  The evidence adduced in that case established that Hoskins continued to practice law in several legal matters despite the fact that his license was already under suspension.

We ordered Hoskins to appear before us on December 1, 2015—the date of oral argument in this case—to address his contempt of our prior order.  When questioned by this court, he admitted that while he was suspended from the practice of law in Ohio he (1) appeared in an Ohio probate court and examined witnesses in an adoption proceeding, (2) created and used an e-mail account in the name of a former colleague and impersonated that former colleague to engage in discovery in another client's case, and (3) deposed a witness in a third legal matter.  In an order issued simultaneously with this opinion, we have fined Hoskins $200 for each of his three acts of practicing law while his license was under suspension and ordered him to pay the costs incurred by relator in pursuing the motion to hold Hoskins in contempt.  *See Disciplinary Counsel v. Hoskins*, __ Ohio St.3d __, 2016-Ohio-4594, __ N.E.3d __.  Because the conduct was not charged in the disciplinary complaint that is currently before us, however, we have not considered it in determining the appropriate sanction for the misconduct found in this case.

Rosemary D. Welsh and Edwin W. Patterson III, General Counsel, for relator.

Robert Hoskins, pro se.

_____