[Cite as *Hunt v. Alderman*, 2017-Ohio-7591.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MIGUEL HUNT, et al.

    Appellees

    v.

ROBERT E. ALDERMAN, JR.

    Appellant

C.A. No.    28321

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2012-09-5320

DECISION AND JOURNAL ENTRY

Dated: September 13, 2017

HENSAL, Presiding Judge.

{¶1} Robert Alderman appeals an order of the Summit County Court of Common Pleas that denied his motion for summary judgment. For the following reasons, this Court affirms.

I.

{¶2} On October 21, 2011, members of the Summit County SWAT team participated in a Taser instruction course. The course included simulations in which the team practiced entering a room. Mr. Alderman and Miguel Hunt were members of the SWAT team and participated in the training. According to the instructor of the course, before the simulations started, he did a safety briefing, reminding the team that they were doing a Taser-driven exercise, so there were not to be any blows between the participants.

{¶3} During the simulations, each member of the team had a different role, which they rotated between sessions. During one of the sessions, Mr. Hunt played the role of the "bad guy[.]" He was supposed to ignore the instructions of the entry team, which would result in one

of them shooting him with the Taser as they closed in on him. Before the session, Mr. Hunt put on a black body suit to prevent the barbs of the Taser from reaching his skin. Although the suit included a black cloth head covering, it did not include a helmet. Mr. Alderman's role during the session was to provide cover for the other members of the entry team. According to him, as soon as he saw the bad guy, he was supposed to separate from the rest of the team and make sure that the bad guy did not do anything that would jeopardize them while they finished entering the room.

{¶4} According to Mr. Hunt, when he entered the training room, he saw Mr. Alderman out in front of him. Mr. Alderman, however, was not holding a Taser, so Mr. Hunt turned to his left and began walking toward the entry-team member with the Taser. As Mr. Hunt approached the team member with the Taser, Mr. Alderman suddenly came up to him from the side and struck him in the side of his head with a submachine gun. Mr. Hunt immediately fell to the floor, and the instructor ordered everyone to stop. Mr. Alderman apologized to Mr. Hunt, claiming that he was not aware that Mr. Hunt was not wearing a helmet.

{¶5} Although Mr. Hunt received workers' compensation benefits, it allegedly did not cover the income he lost from his two other jobs while he was recovering. He, therefore, sued Mr. Alderman for assault and battery, claiming that Mr. Alderman struck him in the head with a gun even though Mr. Alderman knew that it was substantially certain to cause serious injury to him. Mr. Alderman moved for summary judgment, arguing that, because he was Mr. Hunt's co-worker, he is immune from liability under Revised Code Section 4123.741. The trial court denied Mr. Alderman's motion. On appeal, this Court determined that the trial court's order did not provide enough information to conduct a meaningful review of its decision. *Hunt v. Alderman*, 9th Dist. Summit No. 27416, 2015-Ohio-4667, ¶ 19. We, therefore, reversed the

order and remanded the matter for additional proceedings. *Id.* at ¶ 21. On remand, the trial court again denied Mr. Alderman's motion for summary judgment, providing additional explanation for its decision. Mr. Alderman has appealed, assigning three errors. Because each assignment merely involves a different stage of the summary judgment analysis, this Court will consider them together.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY NOT FINDING THAT ALDERMAN MET HIS INITIAL BURDEN OF POINTING TO EVIDENCE IN THE RECORD THAT DEMONSTRATED THAT HE DID NOT KNOW THAT THE HEADGEAR WORN BY HUNT WOULD NOT PROTECT HIM COMPARABLE TO OTHER HEADGEAR USED IN DEFENSIVE TRAINING EXERCISES.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY FINDING THAT DEPUTY JAMES ORSINE'S AND ALDERMAN'S DEPOSITION TESTIMONY SET FORTH SUFFICIENT EVIDENCE THAT ALDERMAN UNDERSTOOD THAT THE HEADGEAR WAS NOT COMPARABLE TO OTHER HEADGEAR USED IN DEFENSIVE TRAINING EXERCISES, THUS CREATING A GENUINE ISSUE OF FACT FOR A JURY AS TO ALDERMAN'S INTENT TO HARM HUNT.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY NOT GRANTING IMMUNITY TO ALDERMAN UNDER R.C. 4123.741.

{¶6} Mr. Alderman argues that the trial court incorrectly denied his motion for summary judgment. Under Civil Rule 56(C), summary judgment is appropriate if:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶7} Section 4123.741 provides that "[n]o employee of any [county] * * * shall be liable to respond in damages at common law or by statute for any injury * * * received * * * by any other employee of such employer in the course of and arising out of the latter employee's employment," if the injury is found to be compensable under the Workers' Compensation statutes. In this Court's previous decision in this matter, it held that the immunity granted to employees by Section 4123.741 does not extend to intentional torts. *Hunt* at ¶ 15. This Court also recognized that the Ohio Supreme Court had defined an intentional tort as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Id.* at ¶ 16, quoting *Jones v. VIP Dev. Co.*, 15 Ohio St.3d 90 (1984), paragraph one of the syllabus.

{¶8} Mr. Alderman argues that he met his initial burden to demonstrate that there is no genuine issue of material fact regarding whether he intended to injure Mr. Hunt. In support of his motion, Mr. Alderman submitted a number of materials, including an affidavit from another SWAT team member, who stated that he did not know that the headgear worn by the bad guy during TASER exercises does not provide the same level of protection as the headgear worn during other training exercises. He also stated that the difference in protection was not discussed

before the simulation began. The team member further stated that he did not know of any personal conflicts between Mr. Alderman and Mr. Hunt and that Mr. Alderman appeared visibly upset when he realized that his blow injured Mr. Hunt.

{¶9} Mr. Alderman also submitted his own affidavit in support of his motion, in which he stated that all of the training suits he had previously seen had significant headgear that would protect the wearer from an application of force to the head. The entry team members, in fact, were wearing hard helmets during the simulations. Mr. Alderman stated that, when Mr. Hunt entered the room, ignored his command, and made an evasive move, he raised his rifle and attempted to tap Mr. Hunt in the side of his head with the muzzle to get his attention. Because both he and Mr. Hunt were moving, however, he ended up striking Mr. Hunt much harder than he had intended. He also thought Mr. Hunt had protective headgear on during the exercise and only learned afterward that the headgear for the TASER suit contains only minimal padding. Mr. Alderman further stated that he did not intend to cause harm to Mr. Hunt.

{¶10} In its order, the trial court did not separately examine whether Mr. Alderman met his burden under the first step of the summary judgment analysis. Upon independent review of the record, however, we conclude that Mr. Alderman satisfied his initial burden under *Dresher* to demonstrate that he did not intend to injure Mr. Hunt or that he knew that it was substantially certain that his actions would injure Mr. Hunt.

{¶11} Because Mr. Alderman met his initial *Dresher* burden, it became Mr. Hunt's obligation to set forth specific facts establishing that there is a genuine issue for trial. Mr. Hunt submitted a deposition of the deputy who was wielding the Taser during the exercise in which Mr. Alderman struck Mr. Hunt. The deputy testified that the purpose of the bad guy's Taser-training outfit is to prevent a Taser barb from making contact with flesh. He said that, during the

simulation, Mr. Hunt's script was to ignore his commands to lie down, which would cause him to use the Taser on Mr. Hunt. Although the deputy was focused on Mr. Hunt during the exercise and did not see Mr. Alderman approach Mr. Hunt, the deputy testified that, when Mr. Hunt was still 10 feet away from him, he saw Mr. Alderman strike Mr. Hunt in the head with the butt of Mr. Alderman's rifle, almost as if Mr. Alderman was a boxer throwing a right punch.

{¶12} Mr. Hunt also submitted the deposition of the Taser-training instructor. The instructor testified that, because it was a Taser-driven exercise, the scenario called for "people closing in, weapons are up, * * * kind of enveloping, closing in on the suspect and then a less lethal * * * the Taser was to be deployed." He testified that there was nothing in his instructions that would call for Mr. Alderman to strike Mr. Hunt in any fashion. In fact, he specifically told everyone that there were not to be any blows between the participants. The instructor testified that he repeated his instructions to the team members just before the simulations started because sometimes people do not pay as close attention in the classroom. He testified that the only contact between the entry team and the bad guy other than the Taser "would have been maybe an escort to the ground and to simulate cuffing once they're down on the ground." He also testified that the Taser simulation suit contains light padding and that its primary purpose is to cover the flesh so that the Taser barbs do not make contact with flesh. He further testified that, although he did not see Mr. Alderman strike Mr. Hunt, after he heard it, he looked and saw Mr. Alderman standing as if Mr. Alderman had just finished a downward strike on Mr. Hunt with the butt of his gun.

{¶13} Mr. Hunt also submitted Mr. Alderman's deposition in support of his opposition to the motion for summary judgment. Mr. Alderman testified that he has some hearing and memory loss and that he could not recall any of the instructions that were given before the

simulations began. According to Mr. Alderman, when he had done Taser training in the past, the suspect wore a "RedMan" suit that protected the wearer from head to toe. Although he had not seen anyone struck in the head during prior Taser exercises, he had seen someone wearing a RedMan suit be struck in the head during a defensive tactics training exercise. He, himself, had struck another team member in the head during a resisting-arrest exercise, but only with his arms and hands. The person he struck during the resisting-arrest exercise was wearing a protective outfit that resembled a RedMan suit.

{¶14} Mr. Alderman testified that he could tell that what Mr. Hunt was wearing during the Taser-training exercise was not a RedMan suit and that what Mr. Hunt was wearing on his head was not a hard shell. He described Mr. Hunt's headgear as a "veiled covering" and admitted that it was not similar to any of the helmets or headgear he had seen before. Mr. Alderman also testified that he would only be allowed to strike someone else in the head during a training exercise if lethal force was justified, which he admitted was not justified during the Taser-training exercise. He admitted that he struck Mr. Hunt very close to his temple and that the area is a vulnerable place that could be "really serious" if it was struck. He testified that, as the deputy providing cover for the rest of the team, however, he could not let Mr. Hunt get by him and jeopardize the rest of the team. According to Mr. Alderman, "the only thing on [his] mind at that point in time was [that he] c[ould]n't let [the bad guy] get by [him]." Because he was "wrapped up in the scenario[,]" he testified that he struck Mr. Hunt with the "intent of disabling" him, despite not seeing "any significant head protection" on Mr. Hunt.

{¶15} Viewing the evidence in a light most favorable to Mr. Hunt, Mr. Alderman admitted that Mr. Hunt was not wearing any sort of gear that he knew provided head protection. He struck Hunt near one of his temples, with the intent to disable him, even though he admitted

that a blow to that part of the head could cause serious harm to an individual. He also struck Mr. Hunt in the head despite the fact that the situation did not call for lethal force and despite the fact that he had been specifically instructed not to exchange blows with the other participants. Because the exercise was "Taser-driven[,]" and did not call for any significant contact between the entry team and the bad guy, Mr. Alderman could not reasonably assume that Mr. Hunt would be prepared to receive a blow to his head from the side. Mr. Alderman also could not reasonably assume that Mr. Hunt would be wearing head gear that had been designed to withstand a blow from the butt of a firearm. Other members of the entry team, in fact, knew that the purpose of the Taser-training suit was simply to provide protection from the barbs of the Taser, knowledge which can be imputed to Mr. Alderman. We, therefore, conclude that Mr. Hunt established that there is a genuine issue for trial regarding whether Mr. Alderman knew it was substantially certain that he would injure Mr. Hunt when he struck Mr. Hunt in the head with his submachine gun during the Taser simulation.

{¶16} Mr. Alderman also argues that there is no exception for intentional torts under Section 4123.741, and that Mr. Hunt chose his remedy by filing for workers' compensation benefits. In support of his argument, Mr. Alderman points to language in *Cleveland Metro. Bar Assn. v. Ranke*, 127 Ohio St.3d 126, 2010-Ohio-5036. In this Court's previous decision in this case, however, it concluded that fellow employees are "not immune from civil liability for intentional torts." *Hunt*, 9th Dist. Summit No. 27416, 2015-Ohio-4667, at ¶ 15. Under the doctrine of law of the case, "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). Absent extraordinary

circumstances, which Mr. Alderman has not established, this Court has no authority to change its prior decision. *See id.* at syllabus.

{¶17} Upon review of the record, we conclude that the trial court correctly denied Mr. Alderman's motion for summary judgment. Mr. Alderman's assignments of error are overruled.

III.

{¶18} Mr. Alderman's assignments of error are overruled. The order of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and MARVIN D. EVANS, Assistant Prosecuting Attorney, for Appellant.

DAVID P. BERTSCH, Attorney at Law, for Appellees.