CINCINNATI BAR ASSOCIATION *v.* GROTE.

[Cite as *Cincinnati Bar Assn. v. Grote*, 127 Ohio St.3d 1, 2010-Ohio-4833.]

*Attorney misconduct, including failing to provide competent representation, failing to act with reasonable diligence in representing a client, and failing to keep client informed — Indefinite suspension.*

(No. 2010-0737 — Submitted July 6, 2010 — Decided October 7, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-054.

————————————

**Per Curiam.**

{¶ 1} Respondent, Jane M. Grote, Attorney Registration No. 0000745, was admitted to the practice of law in Ohio in 1976.

{¶ 2} Relator, Cincinnati Bar Association, filed a complaint against respondent charging her with violations of the Rules of Professional Conduct for her behavior after she was hired by a client to handle a divorce.

{¶ 3} A panel of the Board of Commissioners on Grievances and Discipline heard the case and found clear and convincing evidence that respondent violated seven Rules of Professional Conduct. The panel also dismissed one charge, finding that it was not proven by clear and convincing evidence. The panel recommended that respondent be suspended indefinitely from the practice of law in Ohio. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. We adopt the findings, conclusions, and recommendation of the board and impose an indefinite suspension from the practice of law in Ohio.

**Misconduct**

**{¶ 4}** This case arises out of respondent's behavior after she was hired by a client to handle a divorce in July 2007. The client paid respondent an initial $500, and respondent informed the client that the total fees would not exceed $1,500. There was no written fee contract and no discussion about court costs and filing fees.

**{¶ 5}** The client promptly gave respondent the personal and financial information necessary to initiate the divorce proceedings. Respondent took that information and prepared a draft separation agreement and a shared-parenting plan, mailed them to the client, and requested that the client review the documents and indicate any suggested changes. The client did so and returned the documents in January 2008.

**{¶ 6}** After the client returned the documents, respondent did not respond to the client; in fact, she admits that she did not communicate with the client for the rest of 2008. During that time, the client called and left messages with respondent's secretary and on respondent's voicemail. In January 2009, the client sent respondent a letter by certified mail asking about the status of the divorce. The letter also informed respondent that the client's husband had been selling off their assets and keeping the money and that soon there would be no assets left. Respondent admits that she received the certified letter but that she still did not communicate with the client.

**{¶ 7}** Receiving no response from respondent, the client contacted the Better Business Bureau in early 2009 regarding respondent's behavior. The Better Business Bureau referred her to the Cincinnati Bar Association to file a grievance. The Better Business Bureau did write respondent a letter about the client's complaint, but respondent still did not contact the client. Finally, after the Cincinnati Bar Association began investigating the grievance filed against her, respondent sent the client a letter apologizing for her inaction and refunded the $500 retainer.

**{¶ 8}** At the hearing before the panel, respondent admitted that she had not deposited the $500 retainer into an attorney trust account. She admitted that she did not have professional-liability insurance when she undertook representation of the client and did not notify the client that she did not have insurance. See Prof.Cond.R. 1.4(c). Respondent further admitted at the hearing that she still had not obtained professional-liability insurance or notified her clients that she lacked insurance.

**{¶ 9}** Respondent does not dispute most of the allegations in this case. She admits that she did not do what she was hired to do and did not advise her clients of her lack of insurance. Respondent explained that her failure to communicate with the client began after she accidentally placed the client's file into a pile of closed files. She explained that the neglect continued even after she realized her mistake, because at that point in her life, she was busy with other matters and personal issues. When respondent received the client's certified letter, she realized that she had let the situation get out of hand and did not know what to do, so she did nothing.

**{¶ 10}** Respondent does dispute the allegation that she should have put the $500 in her trust account, arguing to the panel that she felt that it was not necessary to put the money into her trust account because she had earned the fee. But that argument is incorrect. She received the money before she did any work for the client, and therefore, it was unearned and should have been deposited into a trust account.

**{¶ 11}** Respondent explained that she did not purchase professional-liability insurance and did not notify her clients that she lacked insurance, because it "was something [she] hadn't paid that much attention to." She explained that she continued this misconduct, even after the investigation into her conduct began, because she was not sure how much longer she would be allowed to practice law and did not have many new clients.

**{¶ 12}** We agree with the board that respondent's conduct constituted a violation of the following Rules of Professional Conduct: Prof.Cond.R. 1.1, for failing to provide competent representation to the client; 1.3, for failing to act with reasonable diligence and promptness in representing the client; 1.4(a)(2), for failing to consult with her client regarding the means by which the client's objectives would be accomplished; 1.4(a)(3), for failing to keep the client informed about the status of the divorce; 1.4(a)(4), for failing to respond as soon as practicable to reasonable requests for information from the client; 1.4(c), for failing to obtain a signed acknowledgment from the client that he or she had received notice of respondent's lack of professional-liability insurance; and 1.15(c), for failing to keep unearned legal fees in a trust account.

**Sanction**

**{¶ 13}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

**{¶ 14}** The primary aggravating factor in this case is that respondent has been disciplined twice in the past for professional misconduct. The first case involved a violation of DR 1-102(A)(4), for conduct involving dishonesty, fraud, deceit, and misrepresentation, and a violation of DR 6-101(A)(3), for neglecting

legal matters entrusted to her. *Cincinnati Bar Assn. v. Grote* (1987), Disciplinary Docket No. 87-5. Respondent was warned that if she were to be found guilty of misconduct in the future, she would be either suspended from the practice of law indefinitely or permanently disbarred. Id.

{¶ 15} Respondent was disciplined again in 1990 for violating DR 1-102(A)(4) and 6-101(A)(3) after she failed to pursue a client's claim, failed to communicate with her client, and failed to advise her client that she had allowed the applicable statute of limitations to pass. *Cincinnati Bar Assn v. Grote* (1990), 50 Ohio St.3d 156, 553 N.E.2d 657.

{¶ 16} The harm to the client caused by respondent's misconduct in this case, specifically the fact that the client is not yet divorced and the fact that her husband was able to sell off marital property while respondent did nothing, is an additional aggravating factor. BCGD Proc.Reg. 10(B)(1)(h).

{¶ 17} In mitigation, the board found an absence of a dishonest or selfish motive. BCGD Proc.Reg. 10(B)(2)(b). Additionally, respondent cooperated fully with relator and the board throughout the proceedings. BCGD Proc.Reg. 10(B)(2)(d). Respondent admitted the misconduct and accepts responsibility for her actions.

{¶ 18} Although respondent returned the $500 fee to the client, it was not returned in a timely fashion and was returned only after respondent was contacted by relator. See BCGD Proc.Reg. 10(B)(2)(c). Therefore, the fact that a refund was made has little mitigating value.

{¶ 19} We have stated in the past that an attorney's failure to render legal services that he or she has been paid to complete is "tantamount to theft." *Disciplinary Counsel v. Sigall* (1984), 14 Ohio St.3d 15, 17, 14 OBR 320, 470 N.E.2d 886. We have indefinitely suspended attorneys for misconduct that demonstrates a pattern of neglect. See *Cincinnati Bar Assn. v. Harmon* (1985), 17 Ohio St.3d 69, 17 OBR 134, 477 N.E.2d 629; *Disciplinary Counsel v. Schiller*,

123 Ohio St.3d 200, 2009-Ohio-4909, 915 N.E.2d 324. In *Harmon*, we indefinitely suspended an attorney for neglecting two legal matters. The attorney in that case had recently been disciplined for neglecting other legal matters. In *Schiller*, although the attorney had no prior disciplinary record, we indefinitely suspended him for neglecting multiple legal matters and failing to advise clients that he did not have professional-liability insurance.

{¶ 20} Even taken alone, respondent's misconduct in this case is very serious, but in considering the two previous disciplinary cases involving respondent, we cannot help but conclude that this misconduct is part of a pattern, bound to be repeated. The fact that respondent did not either obtain professional-liability insurance or obtain acknowledgments of her lack of insurance from her clients after the investigation began, when she was explicitly aware that she must do so, makes it clear that she is not motivated to stop this pattern of misconduct.

{¶ 21} For the foregoing reasons, respondent is indefinitely suspended from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Schuh & Goldberg, L.L.P., and Richard J. Goldberg; and Clements, Mahin & Cohen, L.P.A., Co., and William E. Clements, for relator.

Jane M. Grote, pro se.

_____