CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* RANKE.

[Cite as *Cleveland Metro. Bar Assn. v. Ranke*,

127 Ohio St.3d 126, 2010-Ohio-5036.]

*Attorneys — Misconduct — Failure to obtain clients' consent to forgo responding to motion for summary judgment — DR 6-101(A)(3) — Neglect of entrusted legal matter — Public reprimand.*

(No. 2010-0345 — Submitted April 20, 2010 — Decided October 21, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-085.

_____

**Per Curiam**.

{¶ 1} Respondent, Carolyn Kaye Ranke of Cleveland, Ohio, Attorney Registration No. 0043735, was admitted to the practice of law in Ohio in 1989. On December 8, 2008, relator, Cleveland Metropolitan Bar Association, filed a two-count complaint against her. The complaint alleged that while representing a husband and wife following the husband's catastrophic injury in an automobile accident, respondent had committed multiple violations of DR 6-101(A)(3) (prohibiting neglect of an entrusted legal matter) and 7-101(A) (prohibiting a lawyer from (1) intentionally failing to seek the lawful objectives of his client, (2) intentionally failing to carry out a contract of employment, or (3) intentionally damaging his client).

{¶ 2} The Board of Commissioners on Grievances and Discipline rejected all but one of the alleged violations, finding that they were not supported by clear and convincing evidence. However, based upon findings that she neglected her clients by failing to obtain their consent to allow a motion for summary judgment to go unopposed, the board recommends that we publicly

reprimand respondent. Neither party has objected to the board's report. For the reasons that follow, we accept the board's findings of fact, conclusions of law, and recommended sanction.

**Misconduct**

{¶ 3} Respondent agreed to represent a husband and wife for claims arising from injuries the husband had suffered in an April 1999 automobile accident while on a business trip in California. The husband, a passenger in a vehicle driven by a coworker, suffered catastrophic injuries that left him permanently disabled, and his coworker died.

{¶ 4} The wife's brother-in-law, an attorney in Cleveland, Ohio, had filed an initial application for workers' compensation benefits in May 1999. But when he failed to take steps to secure the vehicle involved in the accident, the wife terminated her brother-in-law's services and hired respondent to prosecute all claims arising out of the accident, including claims for uninsured/underinsured-motorist insurance.

{¶ 5} Respondent referred her clients to another attorney for the workers' compensation portion of their claims. Although the employer contested the claim on the ground that the husband and his coworker were acting outside of the scope of their employment at the time of the accident, the wife testified that the men were pursuing their employer's business when the accident occurred. After several appeals, the clients prevailed on their claim and secured present and future workers' compensation benefits in excess of $1.5 million.

{¶ 6} Much of relator's complaint involves allegations that respondent violated her ethical duties to her clients by failing to prosecute tort claims against the coworker's estate and the employer to (1) establish liability and damages and (2) recover insurance proceeds, including uninsured/underinsured-motorist coverage, from applicable insurance policies in accordance with this court's decision in *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660,

710 N.E.2d 1116 – a strategy that *might* have resulted in a greater recovery than the clients received through the workers' compensation system.

{¶ 7} R.C. 4123.741, however, provides:

{¶ 8} "No employee of any employer as defined in division (B) of section 4123.10 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

{¶ 9} Thus, before pursuing a tort recovery against the coworker, respondent's clients would have had to withdraw their workers' compensation claim, which they had initiated before hiring her, and forgo the benefits arising from that claim, at a time when their financial position was extremely grim. The same would be true of any attempt to pursue a tort recovery against the employer. See R.C. 4123.74 (complying employers are immune from suit for employee injury received in course of and arising from employment).

{¶ 10} The attorney who had handled the workers' compensation claim testified that it would have been malpractice for her to counsel the clients to withdraw that claim to pursue an uncertain tort recovery. She also stated that if the client had instructed her to do so, she would have withdrawn as counsel.

{¶ 11} The parties stipulated and the board found that in the first action that respondent filed on her clients' behalf, she had (1) named as a defendant the coworker's widow in her capacity as personal representative of the coworker's estate, when no estate had been opened, (2) never conducted any formal discovery, (3) never responded to any formal discovery requests, although she provided relevant medical records and bills to the defendants, (4) failed to

respond to motions to dismiss filed by the coworker's widow and insurance company and then voluntarily dismissed the claims against them and the employer's insurer without prejudice, (5) failed to appear at a pretrial conference, and (6) did not oppose the employer's motion for judgment on the pleadings, which the court later granted.

{¶ 12} The board concluded that none of these acts constituted neglect of an entrusted legal matter. Although the board recognized that respondent did not formally respond to discovery requests, it noted that she did provide relevant medical bills and records to the defendants. The board noted that it is not neglect for an attorney to voluntarily dismiss a defendant instead of responding to a motion to dismiss, nor is it neglect to miss a single pretrial appearance when that failure does not prejudice the client. Moreover, the board rejected allegations that respondent neglected her clients by taking or not taking these actions without her clients' permission, observing that respondent's uncontroverted testimony revealed that she had discussed every decision with her clients and had done her best to keep them apprised of the case status.

{¶ 13} In October 2004, respondent refiled the clients' tort action against the coworker's surviving spouse as the personal representative of the coworker's still unopened estate. Respondent did not conduct any formal discovery and failed to respond to interrogatories and to requests for production of documents and admissions propounded by the defendant. The board concluded that relator had failed to prove by clear and convincing evidence that these actions constituted neglect, because once respondent became aware that she had sued the wrong party, "there was nothing she could do to salvage the case."

{¶ 14} Although the parties had stipulated that respondent did not return phone calls to her clients for extended periods of time, they also stipulated that this conduct occurred when she was in trial on other matters. The parties further acknowledged that at other times, respondent spoke frequently with the clients

and provided uncompensated assistance regarding consumer debt, the husband's driving privileges, student aid for the clients' children, and the wife's charitable activities. Thus, the board found that relator had not shown that respondent's failure to communicate with her clients rose to the level of neglect at any time during their professional relationship.

{¶ 15} The board further rejected allegations that respondent had violated DR 7-101(A) by *intentionally* (1) failing to seek the lawful objectives of her clients, (2) failing to carry out her contract of employment, or (3) prejudicing or damaging her clients. The board stated: "Relator advanced no set of facts which tended to show that respondent intentionally hurt or damaged her clients in any way. On the contrary, the [board] was impressed with the degree of selflessness which respondent exhibited in doing everything she could to help these unfortunate people. While she may or may not have been guilty of negligence in her handling of their case, the [board] finds that she did not act to intentionally damage her clients in any way."

{¶ 16} Furthermore, the board observed that "by the time respondent was hired by her clients, [the brother-in-law] had already, at [the wife's] request, filed an application for Workers' Compensation benefits on behalf of [the husband]. Under the circumstances, the panel was convinced that this may very well have been the better way to address this family's immediate financial needs." While the board agreed that the clients should have been advised of the benefits and drawbacks of pursuing a workers' compensation recovery versus pursuing a tort recovery, it observed that the time for that discussion was before filing the workers' compensation claim – when they were represented by other counsel.

{¶ 17} In contrast, the board accepted the parties' stipulation that respondent had failed to obtain her clients' permission to forgo responding to a summary-judgment motion filed by the coworker's widow in the second tort action. And because respondent had a duty to obtain her clients' consent to allow

the motion to go unopposed and admitted that she had not done so, the board concluded that respondent had violated DR 6-101(A)(3). But in light of the fact that no estate had been opened for the deceased coworker, the board concluded that the dismissal of the action against his widow, as the purported representative of his nonexistent estate, did not prejudice the clients.

{¶ 18} Upon review, we adopt the findings of the board and its conclusions (1) that respondent violated DR 6-101(A)(3) by failing to obtain her clients' consent before deciding not to respond to a motion for summary judgment and (2) that relator failed to prove the remaining alleged violations DR 6-101(A)(3) and 7-101(A) by clear and convincing evidence.

**Sanction**

{¶ 19} In recommending a sanction, the board considered the ethical duties that respondent had violated, the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."), and the sanctions imposed in similar cases. See, e.g., *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16; *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 20} The board found that respondent had committed a single violation of DR 6-101(A)(3) by failing to obtain her clients' consent before allowing the summary-judgment motion in the second tort action to go unopposed. The only aggravating factor found by the board was respondent's failure to acknowledge that she had either engaged in wrongful conduct or committed any ethical violation in not seeking her clients' permission to allow that motion to go unopposed. See BCGD Proc.Reg. 10(B)(1)(g).

{¶ 21} In mitigation, the board acknowledged that respondent has no prior disciplinary violations, had no dishonest or selfish motive, fully and freely

disclosed information to relator, and displayed a cooperative attitude toward the disciplinary proceedings. See BCGD Proc.Reg. 10(B)(2)(a), (b), and (d). Respondent also submitted letters from two judges and two lawyers attesting to her good character and reputation in the legal community. She also agreed to settle a related malpractice action for $419,235.45. These facts also may be considered in mitigation. See BCGD Proc.Reg. 10(B)(2)(e) and (f).

{¶ 22} Relator argued that a one-year suspension with six months stayed was the appropriate sanction for respondent's alleged misconduct, while respondent urged the panel and board to dismiss the case. Noting "the relatively minor nature of the single violation * * * and the mitigating fact that her clients were not prejudiced by it," the board recommended that respondent be publicly reprimanded.

{¶ 23} We have previously found that an attorney's repeated failures to respond to discovery requests, motions to exclude and to dismiss, and the dismissal of a case without the client's consent demonstrate a pattern of neglect in violation of DR 6-101(A)(3). *Stark Cty. Bar Assn. v. Watterson*, 103 Ohio St.3d 322, 2004-Ohio-4776, 815 N.E.2d 386, ¶ 25, 46. And in *Medina Cty. Bar Assn. v. Kerek*, 102 Ohio St.3d 228, 2004-Ohio-2286, 809 N.E.2d 1, we publicly reprimanded an attorney who violated DR 6-101(A)(3), as well as 5-103(B) (barring attorneys from giving impermissible financial assistance to a client) and Gov.Bar R. V(4)(G) (requiring an attorney's cooperation in disciplinary proceedings).

{¶ 24} Having reviewed the record, we conclude that the board's recommended sanction is appropriate in this case. Accordingly, respondent is hereby publicly reprimanded for having violated DR 6-101(A)(3). Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

————————————

Jones Day, Robert S. Faxon, and Seth J. Linnick, for relator.

Reminger Co., L.P.A., and George S. Coakley, for respondent.

————————————