**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Ranke*, **Slip Opinion No. 2024-Ohio-5491.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5491

DISCIPLINARY COUNSEL *v.* RANKE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Ranke*, Slip Opinion No. 2024-Ohio-5491.]**

*Attorneys—Misconduct—Multiple violations of the Rules of Professional Conduct—Permanent disbarment and restitution ordered.*

(No. 2024-0491—Submitted July 9, 2024—Decided November 26, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-049.

_____

FISCHER, J., authored the opinion of the court, which KENNEDY, C.J., and KINSLEY, HUFFMAN, and DETERS, JJ., joined. STEWART, J., concurred in part and dissented in part, with an opinion joined by DEWINE, J. JENNIFER M. KINSLEY, J., of the First District Court of Appeals, sat for DONNELLY, J. MARY KATHERINE HUFFMAN, J., of the Second District Court of Appeals, sat for BRUNNER, J.

**FISCHER, J.**

{¶ 1} Respondent, Carolyn Kaye Ranke, of Cleveland, Ohio, Attorney Registration No. 0043735, was admitted to the practice of law in Ohio in 1989.

{¶ 2} On October 21, 2010, we publicly reprimanded Ranke for a pattern of neglect in a single client matter. *Cleveland Metro. Bar Assn. v. Ranke*, 2010-Ohio-5036, ¶ 1, 24. And on September 22, 2011, we indefinitely suspended Ranke for improperly maintaining her client trust account, failing to file an appellate brief on a client's behalf, and failing to cooperate in the disciplinary investigation. *Disciplinary Counsel v. Ranke*, 2011-Ohio-4730, ¶ 2, 21. On November 24, 2015, we reinstated Ranke's license to practice law. *Disciplinary Counsel v. Ranke*, 2015-Ohio-4799, ¶ 2.

{¶ 3} Relator, disciplinary counsel, filed a new complaint against Ranke in December 2022, which was amended twice. In the second amended complaint, filed in September 2023, relator charged Ranke with 30 violations of the Rules of Professional Conduct arising from her handling of four different client matters. Among other things, her alleged misconduct included neglecting her clients, failing to deposit client funds into a client trust account, and lying to a tribunal.

{¶ 4} The parties submitted stipulations of fact and misconduct, along with 84 stipulated exhibits. Relator submitted three additional exhibits. Ten witnesses, including Ranke, testified at a hearing conducted by a three-member panel of the Board of Professional Conduct. The panel issued a report finding that Ranke had committed most of the charged misconduct and recommending that she be permanently disbarred from the practice of law in Ohio and pay restitution to one of her former clients. The board adopted the panel's findings of fact and misconduct and its recommended sanction.

{¶ 5} Ranke objects to the board's report on three grounds: Her first two objections relate to the board's findings that she acted with a dishonest or selfish motive and that she refused to acknowledge the wrongfulness of her conduct. Her

third objection relates to the board's recommended sanction; she asserts that an indefinite suspension, not permanent disbarment, is the appropriate sanction here. In relator's answer to Ranke's objections, relator agrees with Ranke that an indefinite suspension is the appropriate sanction to be imposed in this case based on this court's precedent but acknowledges that permanent disbarment may be necessary to protect the public.

{¶ 6} After reviewing the record and our precedent, we sustain Ranke's objections, in part. Nevertheless, we adopt the board's findings of misconduct and recommended sanction of permanent disbarment, and we order Ranke to make restitution to one of her former clients.

## MISCONDUCT

### *The Winegarner matter*

{¶ 7} In June 2021, Raphelle Winegarner was convicted of multiple felony offenses for which he was ultimately sentenced to 33 years' imprisonment. *See State v. Winegarner*, Cuyahoga C.P. No. CR-20-648107-A (Sept. 9, 2021). At Winegarner's sentencing hearing in September 2021, the trial court appointed Ranke to represent Winegarner on appeal. *See Winegarner*, Cuyahoga C.P. No. CR-20-648107-A. (Sept. 20, 2021). Ranke received the court's September 20 entry appointing her as appellate counsel. The deadline for Winegarner to file a notice of appeal of his convictions was October 9, but Ranke failed to file a timely notice of appeal on Winegarner's behalf.

{¶ 8} On November 16, Winegarner's mother, Paulette, texted Ranke: "Waiting on appeal." Ranke replied to Paulette's text that same day: "Will send it to you. Still in court and haven't made it back from [the] office." Paulette followed up with Ranke later that evening, again by text: "I am waiting on you to send the appeal." Ranke replied: "I just got out of trial. Will send it to you. Sorry for the delay." The next morning, Paulette again texted Ranke: "Where is the appeal that was filed?" That night, Paulette texted Ranke once more, stating that she was

3

waiting on "the appeal that was filed" and that she had not seen it. Ranke replied: "Did you check your spam, sent today around 2. Let me now (sic). Will resend." Paulette responded that she "didn't get it." Paulette subsequently contacted the court and learned that Ranke had not filed a notice of appeal on her son's behalf and that the filing deadline had passed.

{¶ 9} Shortly thereafter, Paulette hired an attorney to file a notice of appeal and a motion for delayed appeal on Winegarner's behalf. The motion included an affidavit from Paulette in which she attested that Ranke had falsely represented to her that the notice of appeal had been filed when, in fact, Ranke had not taken any action on Winegarner's behalf. The court of appeals granted Winegarner's motion, allowing the appeal to proceed.

{¶ 10} Paulette filed a grievance against Ranke that December, which resulted in relator's sending Ranke a letter of inquiry about her handling of Winegarner's case. Ranke failed to respond to that letter or to relator's two subsequent inquiries. When Ranke appeared for a deposition related to the grievance in April 2022, she testified that she had sent her response to the grievance to relator's office by email. She promised to provide relator with another copy of that response, including proof that she had previously sent a response. After the deposition, relator emailed Ranke asking for two things by May 4: (1) proof of her response and (2) proof of her professional-liability insurance. Ranke did not provide either of those things by the deadline.

{¶ 11} On May 12, relator emailed Ranke inquiring about her production of the two requested items and asking for a reply by May 19. In July, relator again asked Ranke for proof of her professional-liability insurance. Ranke provided her insurance information that same day and asked what else relator needed from her. Relator told Ranke that she still needed to produce proof of having previously sent a response to the letter of inquiry; relator requested a reply by August 3. Ranke did not respond by that date.

4

{¶ 12} At her disciplinary hearing, Ranke initially attempted to explain that her texts to Paulette did not relate to Winegarner's notice of appeal, but later in the hearing, Ranke agreed that from the context of the texts, Paulette believed that Ranke had filed a notice of appeal and that she had not been honest with Paulette. Considering this testimony and the language of the texts, the board determined that Ranke had deliberately misled Paulette into believing that a notice of appeal had been filed on Winegarner's behalf.

{¶ 13} Based on Ranke's conduct, the parties stipulated and the board found that Ranke violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). The board further found by clear and convincing evidence that Ranke's conduct violated Prof.Cond.R. 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), 8.1(b) (prohibiting a lawyer from failing to disclose a material fact or knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*The Caraballo matter*

{¶ 14} In October 2020, Joshmarie Caraballo hired Ranke to handle a legal matter involving custody of Caraballo's children and passport issues for a $1,100 flat fee, plus any filing fees. Ranke presented Caraballo with a fee agreement, and Caraballo made cash payments totaling $1,300 to Ranke. Ranke did not deposit the money into a client trust account.

{¶ 15} Ranke did not respond to calls from Caraballo or otherwise communicate with Caraballo about the status of her legal matter throughout the representation. Ranke did not perform any legal work on Caraballo's behalf. That inaction led Caraballo to make several requests for a refund from Ranke.

{¶ 16} In March 2022, Caraballo filed a grievance against Ranke. Relator sent Ranke multiple letters of inquiry and emails requesting her timely response. By the time of her deposition in April, Ranke still had not submitted a written response to relator's inquiries. In July, Ranke met with Caraballo and issued a partial refund of $1,100. Ranke initially kept $200 of the fee because she planned to see if she could still make some progress on the case, but Ranke returned the remaining $200 to Caraballo when Caraballo appeared at the disciplinary hearing.

{¶ 17} Based on Ranke's conduct, the parties stipulated and the board found that Ranke violated Prof.Cond.R. 1.3, 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), and 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment). The board also found by clear and convincing evidence that Ranke's conduct violated Prof.Cond.R. 8.1(b).

*The Brantley matter*

{¶ 18} In June 2019, Shelda Brantley hired Ranke to represent her and her business in a civil lawsuit filed by three former employees seeking damages for unpaid wages. On June 13, Brantley initially paid Ranke an attorney fee of $500. Over the next six months, Brantley paid Ranke attorney fees totaling $8,100. Ranke did not deposit these advanced fees into a client trust account.

{¶ 19} On June 21, Ranke filed a notice of appearance and substitution of counsel in the civil action. Ranke told Brantley that she was also going to file a motion to dismiss the complaint, but she never did. In July, the plaintiffs in the civil action filed a motion to show cause based on the defendants' failure to respond to discovery requests. The plaintiffs' counsel stated that he had attempted to contact Ranke about the outstanding discovery but she had not returned his call. The trial court scheduled a hearing on the motion and ordered Ranke to appear and show cause why the defendants should not be held in contempt for failure to respond to

6

discovery. Ranke did not appear for the hearing. The court granted the plaintiffs' motion and ordered Ranke to provide discovery by October 3. Ranke did not comply with the court's order.

{¶ 20} Ranke appeared for a telephone conference in the civil action on October 9, during which the trial court extended the discovery deadline to October 14. Ranke failed to fully comply with the plaintiffs' discovery requests, providing incomplete or no responses. The plaintiffs subsequently filed a motion for sanctions and attorney fees and a motion to compel. Ranke did not file a response to either motion on the defendants' behalf.

{¶ 21} Brantley texted Ranke numerous times, asking Ranke when the case against her and her business would be resolved. Ranke failed to provide a substantive response to Brantley's inquiries. On January 3, 2020, the trial court granted the plaintiffs' two motions. In its ruling on the sanctions-and-attorney-fees motion, the court prohibited the defendants from opposing certain claims brought by the plaintiffs and ordered the defendants and Ranke to pay $4,886 in attorney fees.

{¶ 22} In March, the plaintiffs filed a motion for summary judgment, and in April, Ranke filed a brief in opposition to that motion; Ranke's filing was a day late and lacked a supporting affidavit from Brantley. The same day that Ranke submitted the brief in opposition, she also filed a "Request for Leave to File Further Opposition to Motion for Summary Judgment," in which she falsely stated, "Defendant Shelda Brantley has been provided an affidavit in support of the opposition filed with this court. However, due to quarantine provisions imposed by the Governor of the State of Ohio, a fully executed affidavit cannot be obtained." Ranke requested an extension of time to file the affidavit, which the court granted, but Ranke failed to file anything further on the defendants' behalf.

{¶ 23} On April 24, the trial court granted the plaintiffs' motion for summary judgment and awarded them $268,802.72 in damages. The plaintiffs then

filed a motion for attorney fees and costs, but Ranke did not file a response. The trial court awarded the plaintiffs $37,873.50 in attorney fees and $650.00 in costs. Ranke did not inform Brantley of the adverse judgment against her and her business; Brantley only learned about it when she contacted another attorney.

{¶ 24} Brantley then hired attorney George Argie to pursue a legal-malpractice claim against Ranke. On November 20, Argie emailed a letter to Ranke informing her of the representation and his intent to file a motion for relief from judgment to mitigate the damages awarded against Brantley and her business caused by Ranke's representation of them in the civil action. Ranke responded by email, stating that she had malpractice insurance, that she would "cooperate with [Argie's] office to advance the client's interest," and that she would provide Argie with her file and discuss the issues with him. Over the next month, Argie made four requests for Ranke's cooperation, to no avail. In the meantime, Argie filed a motion for relief from judgment in the civil action against Brantley and her business, which the trial court denied.

{¶ 25} In March 2022, Ranke was served with Brantley's legal-malpractice complaint. The trial court held a telephonic case-management conference at which Ranke failed to appear. Brantley filed a motion for default judgment against Ranke for failing to file a responsive pleading to the complaint. Judge Kimbler, who was assigned to the case, originally wanted to schedule an in-person case-management conference, but upon realizing that a motion for default judgment was pending, he notified the parties that he did not see the need for a case-management conference and that he intended to rule on the motion. Ranke responded to Judge Kimbler's email by falsely stating, "I did file an answer pro se in this case and will send to you Judge Kimbler. I am unaware of any conference that I did not attend and do not believe that I am in default. I will confirm this information as (sic) resolve quickly."

8

{¶ 26} Ranke did not file an answer or any responsive pleading in the legal-malpractice action against her, nor did she attend the February 9, 2023 hearing on the motion for default judgment. Judge Kimbler issued a judgment in favor of Brantley in her legal-malpractice action against Ranke, awarding her $307,326.22, plus 5 percent interest and court costs. Over $200,000 of that judgment was satisfied through garnishment of Ranke's bank account, and the day before her disciplinary hearing, Ranke delivered a check to Brantley's collections attorney that, when cleared, would satisfy the remainder of the judgment.

{¶ 27} Relator sent Ranke two letters of inquiry regarding the Brantley matter, but Ranke failed to respond by the stated deadlines. At the disciplinary hearing, when questioned about the affidavit she claimed to have sent Brantley for completion so that it could be filed in response to a motion, Ranke initially testified that she did send Brantley an affidavit to sign, but she later testified that she "believe[d]" she had emailed it to Brantley. And she became flustered when questioned by a panel member about it:

> Q: Have you looked for that email that you sent to [Brantley] with the affidavit?
>
> A: I have the affidavit, but I haven't — I haven't looked at it. I don't believe — I don't — she's indicated that she had no contact with me. I have no reason to dispute. I never had contact with Ms. Brantley again from the point in time sometime in, I believe, March, maybe even February.
>
> . . .
>
> . . . I prepared an affidavit, and I tried to reach out to Ms. Brantley to get her to sign it. Okay?

At the disciplinary hearing, Brantley testified that she did not have a discussion with Ranke in March or April 2022 about needing to sign an affidavit in connection with the civil action against her and her business and that she did not receive an affidavit from Ranke to sign in connection with that case. The board concluded that Ranke had made a false representation to the trial court about the affidavit in the pleading she filed in that civil action.

{¶ 28} When asked about her failure to communicate with Brantley's new attorney, Argie, Ranke testified that she did not respond to any of Argie's emails because she had "just put it off and buried it." Ranke also disputed that she had made a false statement to Judge Kimbler regarding filing an answer in the legal-malpractice case against her, even though she stipulated that she did make a false statement to the court in that regard. The board found that Ranke had either deliberately made a false statement to the court or "allowed a false statement to stand without correction" because (1) she never filed an answer or any other response to the legal-malpractice complaint and (2) she never emailed the judge her answer despite telling him that she would do so. The board noted that had Ranke truly not intended to mislead the court when making the statement to the judge, she would have realized her mistake once she took appropriate action to email a copy of her answer to the judge; however, she took no action whatsoever, allowing the matter to go into default.

{¶ 29} Based on Ranke's conduct, the board found by clear and convincing evidence that Ranke violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.15(c), 1.16(d) (requiring a lawyer to promptly deliver client papers and property as part of the termination of representation), 1.16(e), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 3.4(d) (prohibiting a lawyer from failing to make a reasonably diligent

effort to comply with a legally proper discovery request by an opposing party), 8.1(b), 8.4(c), and 8.4(d).

*The Levert-Hill matter*

{¶ 30} In April 2020, Billie J. Levert-Hill hired Ranke to handle her divorce case. Levert-Hill entered into a flat-fee agreement with Ranke for $1,500.

{¶ 31} On April 30, Ranke filed a notice of appearance in the matter. And on July 8, Ranke filed an answer and a counterclaim to the divorce complaint filed by Levert-Hill's then-husband. In June 2021, the judge set a trial for September 14.

{¶ 32} Early on the morning of the trial, Ranke filed a motion to continue, stating that she was engaged in an ongoing domestic-relations trial that had commenced the day before and would continue day to day until completion. Ranke did not appear for the trial in Levert-Hill's divorce proceeding, did not check on the status of her motion to continue, and did not contact Levert-Hill to inform her about the status of her case. Levert-Hill did not appear for the trial after relying on a prior assertion by Ranke that the trial had been "kicked" to mid-2022.

{¶ 33} The trial court denied Ranke's motion to continue and proceeded with the trial. Levert-Hill's then-husband, who was seeking the divorce, was present with his counsel and a witness. The judge later filed a judgment entry of divorce. Ranke failed to inform Levert-Hill of that decision, and Levert-Hill learned about her divorce only when she received a letter from her ex-husband's attorney enclosing a quitclaim deed for a parcel of property; the letter informed Levert-Hill that the quitclaim deed had been filed "pursuant to the entry in the divorce case." Levert-Hill texted Ranke multiple times asking for her client file, but Ranke did not respond to those texts or give Levert-Hill her client file. Levert-Hill later filed a legal-malpractice action against Ranke, which Ranke said was pending at the time of her disciplinary hearing.

{¶ 34} Relator sent Ranke two letters of inquiry regarding the Levert-Hill matter. Ranke did not respond to the first letter of inquiry and filed an untimely

response to the second one. At the disciplinary hearing, a dispute arose over how much Levert-Hill had paid Ranke. Levert-Hill asserted that she had paid the full $1,500 under the flat-fee agreement, while Ranke claimed that she had been paid only $1,000. Regardless of the amount Ranke received, she admitted that she did not deposit the fee paid to her by Levert-Hill into a client trust account. Finding that Levert-Hill was the more credible witness, the board determined that Levert-Hill had paid Ranke the full $1,500.

{¶ 35} Further, Ranke agreed during her disciplinary-hearing testimony that the divorce had been emotional for Levert-Hill and that Levert-Hill was a vulnerable client. Ranke also agreed with one panel member's characterization that she had left Levert-Hill "high and dry."

{¶ 36} Based on Ranke's conduct, the board found by clear and convincing evidence that Ranke violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 1.15(c), 1.16(d), 1.16(e), 8.4(c), and 8.4(d). But the board determined that Ranke did not violate Prof.Cond.R. 8.1(b) and dismissed that charge.

## SANCTION

{¶ 37} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases. We have consistently recognized that "the goal of disciplinary proceedings is not to punish the errant lawyer, but to protect the public." *Toledo Bar Assn. v. Hales*, 2008-Ohio-6201, ¶ 21. And "[w]hile consistency is also a goal, 'we examine each case individually and impose the discipline we believe appropriate based on the unique circumstances of each case.'" *Id.*, quoting *In re Disciplinary Action Against Ruffenach*, 486 N.W.2d 387, 390 (Minn. 1992).

{¶ 38} The board did not find *any* mitigating factors in this case. As for aggravating factors, the board found the following:

- Prior disciplinary offenses, Gov.Bar R. V(13)(B)(1);

- A dishonest or selfish motive, Gov.Bar R. V(13)(B)(2);

- A pattern of misconduct, Gov.Bar R. V(13)(B)(3);

- Multiple offenses, Gov.Bar R. V(13)(B)(4);

- Lack of cooperation in the disciplinary process, Gov.Bar R. V(13)(B)(5);

- Submission of a false statement during the disciplinary process, Gov.Bar R. V(13)(B)(6);

- A refusal to acknowledge the wrongful nature of the dishonest conduct, Gov.Bar R. V(13)(B)(7);

- The vulnerability of and resulting harm to one of the victims of the misconduct, Gov.Bar R. V(13)(B)(8); and

- Failure to make restitution to a client, Gov.Bar R. V(13)(B)(9).

{¶ 39} The board determined that permanent disbarment is the appropriate sanction in this case. In doing so, it relied on this court's decisions in *Trumbull Cty. Bar Assn. v. Large*, 2018-Ohio-4074; *Cincinnati Bar Assn. v. Sullivan*, 1995-Ohio-255; *Disciplinary Counsel v. Rutherford*, 2018-Ohio-2680; and *Warren Cty. Bar Assn. v. Marshall*, 2009-Ohio-501.

{¶ 40} Ranke objects to the board's report on three grounds: (1) she disputes the board's finding that she acted with a dishonest or selfish motive, (2) she objects to the board's finding that she refused to acknowledge the wrongfulness of her conduct, and (3) she asserts that an indefinite suspension is the appropriate sanction for her misconduct.

*Ranke's first objection*

{¶ 41} With regard to Ranke's first objection, we reject Ranke's claim that she did not act with a dishonest or selfish motive. An attorney's conduct and the circumstances surrounding that conduct allow us to infer the attorney's intent, *see Cincinnati Bar Assn. v. Wiest*, 2016-Ohio-8166, ¶ 29, and state of mind, *see*

*Disciplinary Counsel v. Robinson*, 2010-Ohio-3829, ¶ 18. In the Winegarner matter, Ranke continuously misled Winegarner's mother into believing that a notice of appeal had been filed in her son's criminal case when it had not been. Ranke's repeated attempts to cover up her failure to act in that matter can only be described as dishonest and self-serving.

{¶ 42} In the Brantley matter, two of Ranke's actions stand out: (1) Ranke's false statement to the trial court that she had provided an affidavit to Brantley to be completed and filed in response to a motion and (2) Ranke's false assertion to Judge Kimbler that she had filed an answer in the legal-malpractice action that Brantley had filed against her. Ranke stipulated to having given both false statements, but at the disciplinary hearing, she tried to walk both of those stipulations back. The panel—which we typically defer to on credibility determinations, *see Cuyahoga Cty. Bar Assn. v. Wise*, 2006-Ohio-550, ¶ 24—found that Ranke was not credible in her testimony about these issues. We agree with the finding that Ranke's conduct was dishonest and selfish.

{¶ 43} Finally, in the Levert-Hill matter, Ranke falsely conveyed to Levert-Hill that the trial in her divorce case had been continued when it had not been, and she failed to keep apprised of the status of the case, which proceeded to trial in Levert-Hill's absence. Here too Ranke's conduct was dishonest and self-serving.

{¶ 44} In sum, we can infer from Ranke's conduct and the circumstances surrounding it that she acted with a dishonest or selfish motive when she repeatedly lied to cover her neglect of and missteps in these three client matters. Therefore, we overrule Ranke's first objection.

*Ranke's second objection*

{¶ 45} In her second objection, Ranke contends that she did not refuse to acknowledge the wrongfulness of her conduct. Throughout the disciplinary process, Ranke acknowledged that she had neglected several client matters, that her conduct negatively impacted her clients, and that she demonstrated a pattern of

neglect. Ranke also stipulated to numerous facts and exhibits and several rule violations. True, Ranke disputed a substantial portion of the charges leveled against her by relator and claimed that she did not have a dishonest or selfish motive. However, an attorney is entitled to contest charges or adverse findings in disciplinary proceedings, and the fact that the attorney does so does not necessarily mean that he or she has not accepted the wrongfulness of his or her conduct. Ranke did not have to admit to all of relator's allegations of misconduct or aggravating circumstances. We conclude that the board erred in finding that Ranke refused to acknowledge the wrongfulness of her conduct. Therefore, we sustain Ranke's second objection.

{¶ 46} However, we decline to consider Ranke's acknowledgement of the wrongfulness of her conduct as a mitigating factor as Ranke urges us to do. The refusal to acknowledge the wrongful nature of one's conduct is listed in Gov.Bar R. V(13)(B)(7) as an aggravating factor to be considered by the board, but the opposite is not listed in Gov.Bar R. V(13)(C) as a mitigating factor to be considered by the board.

*Ranke's third objection*

{¶ 47} In her third objection, Ranke asserts that an indefinite suspension is the appropriate sanction for her misconduct, not permanent disbarment as recommended by the board. However, this court has repeatedly stated that "accepting payments from clients and then failing to perform any work 'is tantamount to theft, for which the presumptive sanction is disbarment.'" *Disciplinary Counsel v. Vick*, 2022-Ohio-2541, ¶ 27, quoting *Cincinnati Bar Assn. v. Fernandez*, 2018-Ohio-3828, ¶ 15, citing *Disciplinary Counsel v. Horan*, 2009-Ohio-4177, ¶ 22-23; *see also Columbus Bar Assn. v. Stubbs*, 2012-Ohio-5481, ¶ 19.

{¶ 48} In this case, Ranke accepted payment from Caraballo and failed to perform any work on Caraballo's case. Therefore, the presumptive sanction in this case is permanent disbarment, unless there are any mitigating factors present. *See*

*Vick* at ¶ 21-30 (indefinitely suspending the disciplined attorney because he did not have a prior disciplinary record and "some event may have triggered [his] misconduct"). *No mitigating factors* are present here. Hence, permanent disbarment is the appropriate sanction.

{¶ 49} Ranke has already been publicly reprimanded by this court once for neglecting client matters, *see Ranke*, 2010-Ohio-5036, at ¶ 2, 24, and was later indefinitely suspended in a separate disciplinary proceeding for similar misconduct, *see Ranke*, 2011-Ohio-4730, at ¶ 2, 21. This is the third time Ranke has been before us for the same type of misconduct, and this time the complaint involves four separate client matters. Considering her disciplinary history combined with the misconduct in this matter, Ranke has acted wrongfully in at least six separate client matters and has committed at least 40 total ethical violations. *See supra* ¶ 13 (5 violations), ¶ 17 (5 violations), ¶ 29 (11 violations), ¶ 36 (8 violations); *Ranke*, 2010-Ohio-5036, at ¶ 18 (1 violation); *Ranke*, 2011-Ohio-4730, at ¶ 9-10 (3 violations), ¶ 13-14 (5 violations), ¶ 15-16 (2 violations).

{¶ 50} Ranke clearly did not learn her lesson from the prior public reprimand or from the previously imposed indefinite suspension. An indefinite suspension is not a sanction that should be imposed twice. Rather, if an attorney is indefinitely suspended, subsequently reinstated, and then commits further serious misconduct, the appropriate sanction is permanent disbarment. *See Disciplinary Counsel v. Meehan*, 2012-Ohio-3894, ¶ 11, quoting *Disciplinary Counsel v. McDonald*, 71 Ohio St.3d 628, 629 (1995) ("disbarment is generally necessary 'where previous sanctions have been ignored with relative impunity' ").

{¶ 51} Our precedent also supports permanent disbarment in this case. This court permanently disbarred attorneys in *Large*, 2018-Ohio-4074, *Rutherford*, 2018-Ohio-2680, and *Marshall*, 2009-Ohio-501. In each of those cases, the attorney had been before this court for previous disciplinary proceedings, had been suspended at least once, and was before this court again for neglecting client

matters. *See Large* at ¶ 2-3; *Rutherford* at ¶ 2-4; *Marshall* at ¶ 1, 14. Likewise, in this case Ranke has been disciplined by this court twice, has been indefinitely suspended once, and has yet again neglected client matters. Also in each of the comparison cases, this court found no mitigating factors but several aggravating factors, including a selfish or dishonest motive, a pattern of misconduct, multiple offenses, and client harm. *See Large* at ¶ 16; *Rutherford* at ¶ 17; *Marshall* at ¶ 18. The same is unabashedly true in this case—even when we disregard the board's finding that Ranke refused to acknowledge the wrongfulness of her conduct, eight aggravating factors are still present in this case.

{¶ 52} Furthermore, in two of the comparison cases, the attorney owed restitution, *see Large* at ¶ 22; *Rutherford* at ¶ 17, and in this case, Ranke also owes restitution to one of her former clients. In each of the comparison cases, the attorney was permanently disbarred. *See Large* at ¶ 24; *Rutherford* at ¶ 20; *Marshall* at ¶ 21. Likewise in this case, the appropriate sanction is permanent disbarment.

{¶ 53} This court's decision in *Fernandez*, 2018-Ohio-3828, also supports the permanent disbarment of Ranke. In *Fernandez*, the attorney was charged with misconduct a second time, his prior misconduct having arisen out of client neglect. *Id.* at ¶ 1. In the first disciplinary action, the attorney was publicly reprimanded. *Id.*; *see also Cincinnati Bar Assn. v. Fernandez*, 2016-Ohio-5586, ¶ 20. In the second disciplinary action, the attorney was indefinitely suspended from the practice of law for neglecting three client matters, failing to refund unearned fees to clients, overdrawing his client trust account, and failing to respond to the disciplinary investigation. *Fernandez*, 2018-Ohio-3828, at ¶ 2, 23. The board rejected the parties' stipulation to two mitigating factors and ultimately found none. *Id.* at ¶ 14, 18-22. Aggravating factors included a history of prior discipline, a pattern of misconduct, multiple offenses, harm to clients who were particularly

vulnerable, failure to cooperate with the disciplinary investigation, and a dishonest or selfish motive. *Id.* at ¶ 13-14.

{¶ 54} This court's decision in *Fernandez* supports the permanent disbarment of Ranke because in Fernandez's first serious disciplinary case, this court chose to indefinitely suspend him, s*ee id.* at ¶ 23. And this court did the same for Ranke in 2011—we indefinitely suspended her after she had previously been publicly reprimanded, *see Ranke*, 2011-Ohio-4730, at ¶ 2, 21. But then Ranke's law license was reinstated, *see Ranke*, 2015-Ohio-4799, at ¶ 2, and she committed the same kind of misconduct again. Thus, Ranke was in Fernandez's position in 2011 when she was indefinitely suspended for the first time. But Ranke has already had her indefinite suspension, and her behavior has not changed. So now, coming before us yet again, Ranke must be permanently disbarred.

{¶ 55} Furthermore, this case is distinguishable from most of the cases cited by Ranke in which the attorney was suspended rather than permanently disbarred. For example, in *Cincinnati Bar Assn. v. Grote*, multiple mitigating factors were present, including the lack of a dishonest or selfish motive and cooperation with the investigation. 2010-Ohio-4833, ¶ 17. Unlike in *Grote*, no mitigating factors are present in this case.

{¶ 56} In *Cincinnati Bar Assn. v. Hoskins*, the attorney's only prior discipline from this court was a 60-day suspension imposed as reciprocity for a suspension imposed by the Supreme Court of Kentucky. 2016-Ohio-4576, ¶ 2. Even so, three out of the seven justices still voted to permanently disbar the attorney in *Hoskins*, and he was disbarred less than a year later in a separate proceeding, *see Disciplinary Counsel v. Hoskins*, 2017-Ohio-2924. And the facts of this case are much worse, because Ranke has already been publicly reprimanded and also been indefinitely suspended by this court.

{¶ 57} "The primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the

attorney-client relationship . . . ." *Marshall*, 2009-Ohio-501, at ¶ 19, citing *Disciplinary Counsel v. Agopian*, 2006-Ohio-6510, ¶ 10. Relator acknowledges that permanent disbarment is an appropriate sanction in this case based on Ranke's repeated misconduct despite her previous indefinite suspension. And the three-member panel of the board that conducted the disciplinary hearing in this matter and the board itself take the position that permanent disbarment is necessary to protect the public from Ranke. We agree with the board. Having reviewed the record and our precedent, we conclude that permanent disbarment is the appropriate sanction in this case.

## CONCLUSION

{¶ 58} Accordingly, Carolyn Kaye Ranke is permanently disbarred from the practice of law in Ohio and is ordered to make restitution of $1,500 to Billie J. Levert-Hill within 90 days of the date of this court's order. Costs are taxed to Ranke.

Judgment accordingly.

———————————

**STEWART, J., joined by DEWINE, J., concurring in part and dissenting in part.**

{¶ 59} I agree with the majority's recitation of the facts and ruling on respondent Carolyn Kaye Ranke's first two objections to the Board of Professional Conduct's report and recommendation. And I agree with the majority's order that Ranke pay restitution to one of her former clients. However, I would sustain Ranke's third objection and impose an indefinite suspension from the practice of law rather than permanent disbarment.

{¶ 60} Four cases—three of them cited by Ranke—support my decision: *Cincinnati Bar Assn. v. Grote*, 2010-Ohio-4833; *Mahoning Cty. Bar Assn. v. DiMartino*, 2016-Ohio-536; *Cincinnati Bar Assn. v. Hoskins*, 2016-Ohio-4576; and *Cincinnati Bar Assn. v. Fernandez*, 2018-Ohio-3828.

{¶ 61} In *Grote*, the attorney was before this court for a third time for neglecting clients and other misconduct. Grote's prior discipline arose from conduct involving dishonesty, fraud, deceit, and misrepresentation and from neglecting clients. That prior discipline, combined with the harm done to one of Grote's clients, served as an aggravating factor. *Grote* at ¶ 14. In mitigation, Grote lacked a dishonest or selfish motive, cooperated with the disciplinary proceedings, and admitted her misconduct and accepted responsibility for her actions. *Id.* at ¶ 17. In determining the appropriate sanction, this court noted, "We have indefinitely suspended attorneys for misconduct that demonstrates a pattern of neglect." *Id.* at ¶ 19. After considering Grote's prior misconduct, the court concluded that the most recent misconduct was "part of a pattern, bound to be repeated," *id.* at ¶ 20, and indefinitely suspended her, *id.* at ¶ 21. While the majority claims that Ranke's case warrants different treatment because the mitigating factors that were present in *Grote* are not present here, I believe the two cases at their core are more alike than different and would therefore impose the same sanction here—an indefinite suspension.

{¶ 62} In *DiMartino*, the attorney was charged for a fourth time with misconduct, including neglecting a client, failing to communicate the nature and scope of the representation or his fee, failing to put a contingent-fee agreement in writing, and failing to properly account for funds in his client trust account. DiMartino also failed to respond to repeated inquiries from the bar association about the grievances filed against him. No mitigating factors were present, but six aggravating factors were present, including a history of prior discipline, acting with a dishonest or selfish motive, and failing to make restitution. *DiMartino* at ¶ 12. The court indefinitely suspended DiMartino, concluding that that sanction was "consistent with our 'rule that an attorney's neglect of legal matters and failure to cooperate in the ensuing disciplinary investigation warrant an indefinite

suspension.'" *Id.* at ¶ 14, quoting *Disciplinary Counsel v. Mathewson*, 2007-Ohio-2076, ¶ 19.

**{¶ 63}** In *Hoskins*, the attorney, among other misconduct, neglected client matters, failed to reasonably communicate with clients, engaged in dishonest conduct, failed to deposit an unearned fee into his client trust account, and failed to cooperate in the disciplinary investigation. Like here, no mitigating factors were present. *See Hoskins*, 2016-Ohio-4576, at ¶ 38. Aggravating factors included a history of prior discipline, multiple counts of misconduct, refusal to acknowledge the wrongful nature of his conduct, failure to make timely restitution, submission of false statements or other deceptive practices during the disciplinary proceedings, and failure to cooperate in the disciplinary process. *Id.* When discussing the seriousness of Hoskins's misconduct, the court noted:

> Hoskins does not appreciate the magnitude of his own misconduct even though it touches virtually every aspect of his practice, including how he attracts clients, his fee agreements with those clients, where he deposits the money he receives from his clients, how he communicates (or fails to communicate) with them, whether he returns their files or the unearned portion of their fees upon the termination of his representation, how he interacts with the courts in handling their legal matters, and how he conducts himself in his own dealings with the court. His misconduct demonstrates a disturbing pattern of neglect and an ongoing failure to comply with established rules and procedures—not to mention a flagrant disobedience of court orders and a troubling propensity to engage in dishonesty when his actions are questioned.

*Id.* at ¶ 43. The court concluded that an indefinite suspension was the appropriate sanction "[g]iven the nature and breadth" of the attorney's misconduct. *Id.*

{¶ 64} The majority attempts to distinguish *Hoskins* by noting that three out of seven justices in that case voted to permanently disbar the attorney, that the attorney was eventually disbarred in a subsequent disciplinary action, *see Disciplinary Counsel v. Hoskins*, 2017-Ohio-2924, and that because Ranke was disciplined in two prior disciplinary actions rather than one, *see Cleveland Metro. Bar Assn. v. Ranke*, 2010-Ohio-5036; *Disciplinary Counsel v. Ranke*, 2011-Ohio-4730, the misconduct in this case is worse. *See* majority opinion, ¶ 56. But the two cases are still more alike than different, with similar misconduct, similar aggravating factors, and a similar lack of mitigating factors. The fact that the attorney in *Hoskins* was nearly disbarred in 2016 and then later disbarred in 2017 does not change the fact that this court imposed an indefinite suspension on Hoskins in 2016 under a similar set of facts to those present here.

{¶ 65} Finally, contrary to the majority's position, this court's decision in *Fernandez*, also supports imposing an indefinite suspension here, rather than permanent disbarment. In *Fernandez*, the attorney was charged with misconduct a second time, his prior misconduct having arisen out of client neglect. *Fernandez*, 2018-Ohio-3828, at ¶ 1; *see also Cincinnati Bar Assn. v. Fernandez*, 2016-Ohio-5586, ¶ 1. In the second disciplinary action, the attorney was charged with neglecting three client matters, failing to refund unearned fees to clients, overdrawing his client trust account, and failing to respond to the disciplinary investigation. The board rejected the parties' stipulation to two mitigating factors and ultimately found none. *Fernandez*, 2018-Ohio-3828, at ¶ 14. Aggravating factors entailed a history of prior discipline, a pattern of misconduct, multiple offenses, harm to clients who were particularly vulnerable, failure to cooperate with the disciplinary investigation, and a dishonest or selfish motive. *Id.* at ¶ 13. The court imposed an indefinite suspension in that case. *Id.* at ¶ 22-23. The attorney in

*Fernandez* and Ranke both committed similar misconduct with similar aggravating factors and a lack of mitigating factors. While this is Ranke's third disciplinary case rather than her second as in *Fernandez*, that does not automatically raise the sanction to permanent disbarment.

{¶ 66} In my view, Ranke's case is sufficiently different from those cited by the majority in which the court permanently disbarred the attorneys for their misconduct. *See Trumbull Cty. Bar Assn. v. Large*, 2018-Ohio-4074; *Disciplinary Counsel v. Rutherford*, 2018-Ohio-2680; *Warren Cty. Bar Assn. v. Marshall*, 2009-Ohio-501. In *Large*, the attorney did not acknowledge his neglect of client matters or the necessity that some kind of sanction be imposed for his misconduct until he filed his objections to the board's recommendation of permanent disbarment. *Large* at ¶ 21. Large's neglect caused one client to incur a monetary sanction, which Large did not pay. *Id.* at ¶ 13, 24. Further, in Large's second disciplinary case, he was sanctioned for violating this court's prior suspension order. *Id.* at ¶ 2. Here, by contrast, Ranke readily acknowledged her neglect of client matters and the need for this court to impose a sanction for that misconduct, and the majority recognizes as much in sustaining her second objection to the board's report. While her actions in one client matter caused her client to incur a monetary sanction and liability for damages, Ranke made restitution to that client. Additionally, unlike the attorney in *Large*, Ranke is not accused of violating a prior suspension order. And if the majority is inclined to consider sanctions that were *nearly* imposed in prior cases, I note that in *Large*, three justices dissented from this court's imposition of permanent disbarment and would have imposed an indefinite suspension.

{¶ 67} The attorney in *Rutherford* was suspended five different times, starting just two years after he was admitted to the practice of law, *Rutherford* at ¶ 1-2—certainly a more egregious disciplinary history than Ranke's one prior suspension in her more than 30-year career. *Rutherford* was a clear case of an attorney's ignoring prior disciplinary sanctions with relative impunity, and

permanent disbarment was therefore appropriate. *See Disciplinary Counsel v. Meehan*, 2012-Ohio-3894, ¶ 11, quoting *Disciplinary Counsel v. McDonald*, 71 Ohio St.3d 628, 629 (1995) ("disbarment is generally necessary 'where previous sanctions have been ignored with relative impunity' "). But Ranke's misconduct here is not on the same level as the attorney's misconduct in *Rutherford*, and she therefore should not receive the same sanction.

{¶ 68} And last, the attorney in *Marshall* not only had received two prior two-year suspensions, but he did not attend a prehearing telephone conference or the evidentiary hearing in his third disciplinary case. *Marshall* at ¶ 10-11, 14. While Ranke did not provide relator, disciplinary counsel, with all the information relator requested in this matter, she did not fail to appear at any of the disciplinary proceedings or stonewall the disciplinary process. She stipulated to 84 exhibits, along with facts and misconduct, testified at her disciplinary hearing, and presented evidence in her defense. Without diminishing the seriousness of Ranke's misconduct, in my view, it is not on par with the attorneys' misconduct in *Large*, *Rutherford*, or *Marshall* and does not warrant the same sanction of permanent disbarment that the attorneys in those cases received.

{¶ 69} The common theme of attorney misconduct in *Grote*, *DiMartino*, *Hoskins*, and *Fernandez* was client neglect. The same is true in Ranke's case. And just like Ranke, the attorneys in *DiMartino*, *Hoskins*, and *Fernandez*, failed to fully cooperate in the disciplinary proceedings. I would find that imposing an indefinite suspension in this case would be consistent with this court's past decisions involving attorneys whose misconduct involved client neglect and a failure to fully cooperate in the disciplinary proceedings. *See also Mathewson*, 2007-Ohio-2076, at ¶ 2, 19, 21. And like the attorneys in *Grote*, *DiMartino*, *Hoskins*, and *Fernandez*, Ranke committed misconduct related to her handling of attorney fees. But the attorneys in *Grote*, *DiMartino*, *Hoskins*, and *Fernandez* were not permanently disbarred.

**{¶ 70}** While this is Ranke's third time before this court on disciplinary matters, prior discipline is but one of the factors to be considered when determining the appropriate sanction. *DiMartino* shows that extensive prior discipline does not automatically warrant an attorney's permanent disbarment. And even when considering Ranke's prior discipline, I note that at the time of Ranke's last disciplinary proceeding, which involved similar misconduct as in this case, she had been diagnosed with cancer and was receiving treatments. While Ranke's medical condition during that period does not absolve her of her misconduct, it certainly warrants strong consideration against sanctioning her by ending her professional career as an attorney through permanent disbarment. I would also note that although relator acknowledged that permanent disbarment would be a valid consideration for sanctioning Ranke in this case, relator ultimately stood by its recommendation of an indefinite suspension based on this court's precedent and its weighing of the evidence.

**{¶ 71}** A sanction of indefinite suspension in the current disciplinary matter would not diminish the fact that Ranke's misconduct "touche[d] virtually every aspect of [her] practice" and that her "misconduct demonstrates a disturbing pattern of neglect" and "a troubling propensity to engage in dishonesty when [her] actions are questioned," *Hoskins*, 2016-Ohio-4576, at ¶ 43. But as precedent shows, an indefinite suspension can protect the public while relaying the seriousness of Ranke's misconduct.

**{¶ 72}** For the reasons stated above, I dissent from the majority's decision to permanently disbar Ranke and would impose an indefinite suspension as recommended by relator and consistent with this court's precedent.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai and Audrey E. Varwig, Assistant Disciplinary Counsel, for relator.

Carolyn Kaye Ranke, pro se.

_____